MacFarland, Appellant, *v.* Unemployment Compensation Board of Review.

Argued December 13, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*M. Elizabeth Hatton,* for appellant.

*R. Carlyle Fee,* with him *Clarence E. Blackburn,* for appellee.

OPINION BY RENO, J., January 18, 1946:

The appellant was denied unemployment compensation by the bureau, the referee and the board.

The board found: "1. The claimant was last employed as a fire watch and safety inspector by Publicker Commercial Alcohol Company, 1325 W. Girard Avenue, Philadelphia, Pennsylvania, from July 1944 to May 31,

1945. 2. At the time of his separation, the claimant
was employed as a safety inspector, in which capacity
he had nothing whatever to do with fire equipment. How-
ever, he made repeated complaints to his superiors about
his inability to get life preservers for the employes,
while large sums of money were being expended for
the purchase of fire equipment which he considered un-
necessary. The claimant was warned to refrain from
interfering in matters not within his jurisdiction under
penalty of dismissal, but he nevertheless continued to
make complaints about said equipment to numerous
Government officials and other agencies. He finally went
in person to see Mr. Richard Diamond, Supervisory En-
gineer of the Defense Plant Corporation, and accused
the plant officials of making unnecessary expenditures
of Government money. Mr. Diamond called a meeting
of the plant officials and the City Fire Marshal, at
which the charges preferred by the claimant were proved
to be unwarranted and unfounded and it was estab-
lished that Government money was not used for the
purchase of the equipment in question. The matter was
then referred to the Third Service Command for dis-
ciplinary action. Subsequent thereto, the claimant was
discharged from his employment."

The board's conclusion of law was: "We believe that
the conduct of the claimant was such that he could
reasonably anticipate dismissal would result therefrom.
Therefore, it must be concluded that the claimant
brought about his own discharge and his, resulting un-
employment must be deemed to be due to voluntarily
leaving work without good cause, within the meaning
of Section 402 (b) [43 PS §802] of the [Unemployment
Compensation] Law."

The board's findings of fact, when supported by
evidence, are conclusive upon appeal, which is confined
to questions of law. Unemployment Compensation Law,
December 5, 1936, P. L. (1937) 2897, §510, 43 PS §830.

The findings of fact are supported by the evidence.
Without intending to supplant or criticize the board's

findings, our study of the evidence indicates that the board might have found, in addition to the cause stated in its findings, that claimant was discharged because, to quote a portion of the separation notice signed by the employer's assistant personnel director: "In the opinion of this company's safety department head and the company's physician, the claimant is no longer suitable for industrial work, because of his age [69 years] and definite neurotic tendencies." The testimony reveals an employe, entrusted with the inspection and maintenance of safety measures, performing his duty with an excess of zeal which conceivably may have amounted to officious interference in matters not within the scope of his duties, and for this conduct he was discharged as insubordinate.

It will be observed that the board found as a fact that appellant was discharged, but concluded as a matter of law that he voluntarily quit. Its theory is that when an employe can reasonably anticipate that his conduct will produce a discharge, the ensuing actual discharge is a voluntary quitting. Before us the board's able counsel argued that conduct which might result in a discharge, and actually produces a discharge, constitutes a "constructive voluntary leaving," analogous to the unsettled idea of constructive desertion in the law of divorce.

Unemployment compensation cannot be administered upon vague theories imported from other and unrelated realms of the law. The Unemployment Compensation Law represents "the exercise of the police powers of the Commonwealth" to abolish: "Economic insecurity due to unemployment [which] is a serious menace to the health, morals, and welfare of the people of the Commonwealth." Id. §3, 43 PS §752. Although it brings advantages to the Commonwealth and its political subdivisions by relieving them of the burden of increased poor relief assistance, it is designed primarily for the benefit of the worker upon whom unemployment

"falls with crushing force." Id. These benefits must not be denied him by fanciful, strained, unnatural, distorted or mere technical construction. It is a remedial statute, and excepting the sections imposing taxes, its provisions must be liberally and broadly construed so that its objectives may be completely achieved. We cannot approve an administrative construction which denies compensation to an unemployed worker unless the plain language of the statute clearly excludes him from its benefits.

The board's decision that a discharge under certain circumstances is equivalent to a voluntary relinquishment of employment is directly counter to our construction of the act. We have heretofore plainly held that the two are not the same thing, that one is the opposite of the other. "When we say, 'he left work voluntarily,' we commonly mean, *he left of his own motion; he was not discharged. It is the opposite of a discharge,* dismissal or lay-off by the employer or other action by the employer severing relations with his employes, to provide against which the act was mainly designed": *Labor and Industry Dept. v. Unemployment Compensation Board of Review,* 133 Pa. Superior Ct. 518, 521, 3 A. 2d 211. (Italics supplied). That clear pronouncement must stand; in the state of the law as it was at the time of appellant's separation from employment, it controls the decision of this case; and since he was actually discharged he is entitled to compensation. The reasons for his discharge, and whether he should have anticipated it, were not relevant inquiries.

The board relies mainly upon *Dept. of Labor and Industry v. Unemployment Compensation Board of Review,* 148 Pa. Superior Ct. 246, 248, 24 A. 2d 667, where claimant had stolen the property of a third person for which he was convicted and sentenced to, and served, sixty-two days imprisonment. He had not been discharged, and upon his release he reported to his employer, who advised him that he had been re-

placed by another workman who was doing the work formerly performed by the claimant. Stressing the declaration (§3, supra) that benefits of the act were intended for "persons unemployed *through no fault of their own*", this court held: "The Declaration of Public Policy negatives the conclusion that one who has lost his employment because of his commission of a crime involving moral turpitude shall receive compensation for the unemployment which resulted from his own criminal act." One can read too much into the phrase, "through no fault of their own", and it must not be pushed to its grammatical extreme. It is one thing to say that unemployment resulting from a criminal act involving moral turpitude is a fault that forfeits compensation; it is quite a different thing to say that an employe who is discharged because he has become over-zealous or neurotic, is unemployed through his own fault. The difference is not a difference in degree, it is a difference in the moral quality of the conduct. The first is a wrong, a fault, in morals as well as in law, while the second, if more than a frailty, is only an error of judgment. With due appreciation of the employer's problem created by such an employe, and we do not question its right to discharge, we are unable to hold that the efforts of a safety inspector to provide greater safety facilities, however far afield his zeal may carry him, constitutes such a fault which the legislature intended should deprive him of the benefits of the act. Cf. *Bonner v. Unemployment Compensation Board of Review,* 156 Pa. Superior Ct. 367, 40 A. 2d 106.

A similar controversy will probably not again arise. The Act of May 29, 1945, No. 408, §9, 43 PS §802, effective June 1, 1945, one day after appellant's separation, amends §402 of the Unemployment Compensation Law by adding a clause, and the section now reads: "An employe shall be ineligible for compensation for any week . . . (e) In which his employment is due to his discharge or temporary suspension from work for wilful

424

misconduct connected with his work." By this leg-
islation the General Assembly clearly indicated its
understanding that under the original act a voluntary
relinquishment could not be inferred from a discharge,
otherwise there was no need for the amendment. That
is also our understanding and construction of the un-
amended act.

Decision reversed, and the record is remitted to the
board with instructions to enter an appropriate order
consistent with this opinion.