Bonomo Unemployment Compensation Case.

American Steel & Wire Company of New Jersey, Appellant, *v.* Unemployment Compensation Board of Review.

Argued November 17, 1947. Before RHODES, P. J., HIRT, DITHRICH, ROSS, ARNOLD and FINE, JJ. (RENO, J., absent).

*Paul E. Hutchinson,* with him *Reed, Smith, Shaw & McClay,* for appellant.

*Roland M. Morgan,* with him *T. McKeen Chidsey,* Attorney General, *R. Carlyle Fee,* Assistant Special Deputy Attorney General and *Charles R. Davis,* Special Deputy Attorney General, for appellee.

OPINION BY RHODES, P. J., January 8, 1948:

This is an unemployment compensation case in which the employer has appealed from the decision of the Unemployment Compensation Board of Review. The appeal involves the interpretation of section 402 (d) of the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, as amended by the Act of May 29, 1945, P. L. 1145, §9, 43 PS §802, in order to ascertain the length of the period of disqualification provided for in that section where the claimant's ineligibility for compensation is "due to a voluntary suspension of work resulting from an industrial dispute." The referee and the board held that claimant's disqualification ended the day the strike terminated. Appellant contends that claimant remained ineligible as long as the work stoppage continued, subject to the maximum period of ineligibility provided in clause (i) of section 402 (d).

Claimant was employed at the Rankin works of the American Steel and Wire Company of New Jersey, the appellant. He became unemployed, on January 21, 1946, by reason of an industrial dispute between the United Steel Workers Union and appellant. The dispute, which resulted in a suspension of work, or a strike, involved a controversy over wages. Claimant, as a member of the union, actively participated in the dispute and the resulting suspension of work.

The plant where claimant was employed was engaged in the manufacture of wire of various gauges, wire nails, and other wire products. The material used consisted of steel rods made up in bundles of approximately 48 inches in diameter, and weighing approximately 400 pounds each. Prior to being drawn into wire, the rods were pickled in sulphuric acid and then heated or baked at a high temperature for several hours. The bakers, in which the latter process is carried on, are rectangular ovens 60 feet long by 45 feet wide, which are heated by burners beneath the floor level. Hot gases from combustion chambers pass through the bakers. The

bakers are constructed of brick and the combustion chambers are constructed of firebrick. Upon leaving the bakers, the rods are conveyed to the wire drawing and finishing departments. The claimant in this appeal, Anthony Bonomo, and the other claimants whose claims are pending were employed in the wire drawing and finishing departments as distinguished from the rod bakers.

The referee and the board found that the industrial dispute or strike was settled at 12:01 a.m. February 18, 1946, and that claimant was then ready, willing and able to return to work. However, at a meeting held at that time between representatives of the union and representatives of appellant, the latter "advised that the plant would not be ready to resume operations until March 4, 1946, due to lack of material and the necessity of repairing the bakers." The board affirmed the referee's finding that "The bakers were repaired and the plant ready to resume operations on March 4, 1946, at which time the claimant was recalled."

There was testimony to the effect that the bakers were in need of repair prior to the strike of January 21, 1946, and that this fact was known to appellant. There was also testimony that the bakers were further damaged by reason of the long cooling period caused by the strike, but the extent of damage due to any one cause does not appear. The referee and the board found that the union refused on January 28, 1946, to permit qualified men to enter appellant's plant to repair the bakers during the continuance of the strike. In this connection the board made an additional finding: "By reason of the nature of the processes involved in the plant of the employer company it was not possible for the company to resume operations immediately upon settlement of the dispute, and it was not in position to resume operations until March 4, 1946." The board did not make any finding fixing the blame upon either of the parties for the failure of the plant to resume opera-

tion upon the date set in the agreement for the termination of the strike.

The referee and the board held that claimant's ineligibility ended at 12:01 a.m. February 18, 1946. Appellant's contention is that claimant's ineligibility continued, under the proviso in section 402 (d), until February 24, 1946, inclusive.

Section 402 (d) of the Unemployment Compensation Law, as amended by the Act of May 29, 1945, P. L. 1145, § 9, 43 PS § 802, provides: "An employe shall be ineligible for compensation for any week— . . . (d) In which his unemployment is due to a voluntary suspension of work resulting from an industrial dispute, at the factory establishment or other premises at which he is or was last employed: Provided, That this disqualification shall apply only to any week of unemployment which, in whole or in part, includes any part of a period beginning with the day on which such suspension occurs and ending with (i) the last day of the fourth calendar week immediately following the calendar week in which such suspension occurs, or (ii) the day on which such suspension was terminated, whichever is the earlier . . ."

The real substance of appellant's contention is that the phrase "unemployment due to a voluntary suspension of work resulting from an industrial dispute" should be interpreted to mean that claimant is disqualified, subject to clause (i) of section 402 (d) as to the maximum number of weeks, not for the duration of the strike alone, but also for any additional time of unemployment caused by the strike, that is, the period of actual work stoppage. Appellant further contends, in relation to the limitation on disqualification in the proviso in section 402 (d), that the board erred in holding the "suspension" of work was terminated on the day the strike ended. According to appellant, the word "voluntary" in the phrase "voluntary suspension of work" in the first sentence of section 402 (d) is necessary to

indicate a strike, as opposed to a lockout, or some other action on the part of the employer, but that when the word "suspension" is used later in the proviso in section 402 (d) it means "work stoppage," and has no application to the termination of the strike.

The Legislature, in our opinion, by the language used, intended that the period of the employee's disqualification should be measured by the day the strike or "voluntary suspension" of work ended. The Unemployment Compensation Law is a remedial statute, and its provisions must be liberally and broadly construed so that its objectives may be completely achieved. *MacFarland v. Unemployment Compensation Board of Review*, 158 Pa. Superior Ct. 418, 45 A. 2d 423. Its purposes are clear, and we shall not resort to a strained or narrow construction.

Appellant makes reference to the declaration of policy in section 3, 43 PS § 752, which makes the Act applicable to those who "become unemployed through no fault of their own," and urges upon us the proposition that the strikers are responsible, subject to the limitation clause (i) in section 402 (d) as to the maximum number of weeks, for any unemployment due to or caused by the strike as well as for that unemployment necessarily included in the actual duration of the strike. But that takes too narrow a view of the applicable provisions of the statute. Besides, the general declaration of public policy, as it may relate to unemployment caused by the employee, must yield to the specific designation contained in section 402 (d). *Com. ex rel. v. Macelwee et al.*, 294 Pa. 569, 572, 144 A. 751; *Kolb v. Reformed Episcopal Church of Reconciliation*, 18 Pa. Superior Ct. 477. For the same reason, where the Legislature has made a specific designation as to the exact period of disqualification, we cannot extend that period, under the guise of interpretation, by finding an ambiguity where none exists, or by reading the doctrine of legal causation into this section of the statute. Statutory

rights cannot be so readily destroyed. We think that the import of section 402 (d), considered in its entirety, is plain, and that it requires no extended interpretation. Disqualification exists, in the first instance, where a claimant's unemployment is "due to a voluntary suspension of work resulting from an industrial dispute." The words "such suspension" which occur thereafter three times in the proviso clearly refer, in our judgment, to the term "voluntary suspension" previously used. We do not believe that the Legislature meant "voluntary suspension" in the one instance and "work stoppage" in the other. Where the meaning of a word or phrase is clear as used in one section of the act, it will be construed to mean the same thing in another. *Com. v. Stingel,* 156 Pa. Superior Ct. 359, 362, 40 A. 2d 140.

It is not without some significance that the Legislature, since this controversy arose, further amended section 402 (d) of the Unemployment Compensation Law by the Act of June 30, 1947, No. 493, making the employee ineligible for compensation "for any week . . . (d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute . . ."

Finally, appellant contends that, even under the board's interpretation of "suspension" as a voluntary suspension on February 18, 1946, all of the fifth week, ending February 24th, must be included in the period of ineligibility. Stated briefly, appellant's view, as we understand it, is that where a strike extends beyond one week of seven consecutive days, and into a second or subsequent week of seven consecutive days, all of the subsequent "week," included within the seven-day period in which the strike (voluntary suspension) ends (counting from the day the suspension occurred), must be held a part of the period of ineligibility.

Reduced to its simplest terms, the period of disqualification is "any week of unemployment which, in

whole or in part, includes any part of" the period of voluntary suspension. It seems that the clear meaning of the language used is to disqualify in units of "weeks" of unemployment. Under section 402 (d) the Legislature obviously intended to disqualify a claimant for a full week where a voluntary suspension occurs. Cf. *Bonner v. Unemployment Compensation Board of Review,* 156 Pa. Superior Ct. 367, 371, 40 A. 2d 106, where, under the 1942 amendment to section 402 (d), a claimant was held disqualified for the entire claim week, although, under the findings, the voluntary suspension lasted only one day.

It is unnecessary for us to decide the question which appellant seeks to raise on this branch of the case. Under the facts of the present appeal as found, the strike was settled at 12:01 a.m. February 18, 1946, and claimant was ready, willing and able to return to work during all of February 18, 1946. The referee reasoned, and this reasoning was approved by the board, that "since the strike was settled at 12:01 A.M., February 18, the claimant's period of disqualification because of the industrial dispute had ended as of February 17 and his unemployment from February 18 to March 4 was due to the inability of the company to resume operations and not because of an industrial dispute existing at that time. The period from February 18 to February 24 would, therefore, constitute a full week of unemployment." It is evident therefore that the voluntary suspension ended with the expiration of February 17, 1946. Thus, the "voluntary suspension" ended exactly four full consecutive "weeks" of seven days after it began, and we are not confronted with the problem, which appellant attempts to inject, of a voluntary suspension ending when only a part of a subsequent week has passed. The interpretation placed by the board on the proviso in section 402 (d), as to the number of weeks of ineligibility, was correct.

Decision is affirmed.