Harman Unemployment Compensation Case.
Department of Labor and Industry, Bureau
of Employment Security, Appellant,
*v.* Unemployment Compensation
Board of Review.

Argued June 11, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Morley W. Baker,* Assistant Attorney General, with him *Walter E. Alessandroni,* Attorney General, for Department of Labor and Industry, Bureau of Employment Security, appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Walter E. Alessandroni,* Attorney General, for Unemployment Compensation Board of Review, appellee.

*Sidney G. Handler,* with him *Jerome H. Gerber,* for claimant, intervening appellee.

OPINION BY WATKINS, J., September 17, 1964:

This is an appeal by the Bureau of Employment Security from the decision of the Unemployment Compensation Board of Review holding amended Regulation 117, promulgated by the Bureau, effective January 1, 1962, to be arbitrary, unreasonable and invalid insofar as it purports to restrict the allocation of unused taxable wages to subsequent quarters "in sequence and in the amount in which (such) remuneration is received."

Oscar Lee Harman was involuntarily retired by his employer, Baldwin Lima Hamilton Corporation on October 31, 1961. His actual earnings during 1960 and 1961 were as follows:

### 1960

| | |
|---|---|
| First Quarter | $1518.57 |
| Second Quarter | 1898.01 |
| Third Quarter | 2068.60 |
| Fourth Quarter | 1550.18 |

### 1961

| | |
|---|---|
| First Quarter | $1612.86 |
| Second Quarter | 2065.28 |

Third Quarter ........... 2069.96
Fourth Quarter .......... 781.02

A base year was established as being the third and fourth quarters of 1960 and the first and second quarters of 1961. His earnings for the base year were as follows: third quarter, 1960, $2068.60; fourth quarter, 1960, $1550.18; first quarter, 1961, $1612.86; second quarter, 1961, $2065.28. He had actual earnings during his base year of $7301.92. Only the first three thousand dollars in earnings each year is taxed so he had no reported taxable wages for the third and fourth quarters of 1960 and only three thousand dollars in reported taxable wages for the first and second quarters of 1961. His reported taxable base year wages to determine his entitlement to benefits were: third quarter, 1960, None; fourth quarter, 1960, None; first quarter, 1961, $1612.86; second quarter, 1961, $1387.14. As claimant qualified for a weekly benefit rate of $40 he was paid the maximum for thirty weeks of benefits or a total of $1200.

In November 1962, claimant, being still unemployed, filed a new claim for benefits. His base year actual earnings were as follows: third quarter, 1961, $2069.96; fourth quarter, 1961, $781.02; first quarter, 1962, None; second quarter, 1962, None. Although the claimant had nearly three thousand dollars of actual earnings in his base year he had no reported taxable earnings during that period because the three thousand dollars was already earned and taxed in the first and second quarters of the calendar year 1961.

The bureau issued a benefit rate determination showing disqualification because of insufficient earnings. The claimant then requested reconsideration of the bureau's decision on reported wages and allocation of his unused taxable wages from the prior benefit year. In order to qualify for weekly benefits of $40

only $1825 in qualifying wages are required. Section 404(e) of the Unemployment Compensation Law, 43 PS §804(e). This left $1175 in unused taxable wages available for allocation to the second benefit year.

The case was in this posture when the interpretation of the law made by the Bureau and the Board came into conflict resulting in this appeal. The disposition of this conflict involves the proper interpretation of §4(x)(1) of the Unemployment Compensation Law, 43 PS §753, which reads as follows: "Remuneration paid by an employer in excess of the amount on which contributions are required to be paid may not be considered in determining the compensation rights of an individual under this act. Remuneration paid by an employer on which contributions are required to be paid shall be considered in determining the compensation rights of an individual and for such purpose may be allocated in accordance with rules and regulations of the department to any calendar quarter in which the individual earned remuneration from such employer; Provided, That the sum of the allocation and the earnings reported with respect to any calendar quarter shall not exceed the remuneration paid for such quarter." And the pertinent part of amended Regulation 117 of the Bureau adopted for allocation purposes under §4(x)(1), supra, which reads as follows: "1. Taxable wages reported by an employer for a calendar year may be allocated to those subsequent quarters in such calendar year in which the claimant received remuneration from that employer: Provided that those subsequent quarter(s) are also in the claimant's current base year. Wages must be allocated to those subsequent quarters which are common to the calendar year and the base year in sequence and in the amount in which remuneration was received."

The Bureau following its amended Regulation 117 held that the claimant's unused taxable wages must be

allocated as follows: third quarter, 1961, $1175; fourth quarter of 1961, None; first quarter, 1962, None; second quarter, 1962, None. As he was qualified for benefits at the rate of $40 he must have qualifying base year wages of thirty weeks times $40 or $1200, so that he was disqualified for any benefits for his second benefit year.

The Board in affirming the decision of the referee, instead of allotting the entire $1175 of unused taxable wages to the third quarter of 1961, allocated $987 of it to the third quarter of 1961 and the balance or $188 to the fourth quarter of 1961. Under this allocation his highest quarterly earnings would be $987 and the table in §404(e), supra, indicates that such quarterly earnings (see part A) qualified claimant for weekly benefits of $39 (part B), and his total unused taxable wages of $1175 meets the test of thirty times $39 his weekly benefit rate. §401(a) of the Unemployment Compensation Law, 43 PS §801(a). By so doing the Board did not violate the provisions of §4(x)(1), supra, which forbid a total allocation or the allocation to any given quarter to exceed actual earnings in such period.

The claimant must still meet the qualifying wage requirement of part C, §404(e), supra. By using the "step down" provision he qualified for a weekly benefit of $30 so all four parts of the table are satisfied. *Gonta Unemployment Compensation Case,* 203 Pa. Superior Ct. 455, 201 A. 2d 229 (1964).

It is clear that the Referee and the Board in coming to this decision disregarded the provisions of Regulation 117 and found that regulation to be arbitrary and unreasonable and contrary to the intent of the legislature.

We agree with the contention of the Board that the legislature was moved to amend §4(x)(1), supra, in 1955 because it had resulted in a deprivation of ex-

tended benefits to the steady and industrious worker who had high earnings. *McGinness Unemployment Compensation Case,* 177 Pa. Superior Ct. 104, 110 A. 2d 918 (1955). By the amended act the allocation could be made, under regulations of the Board, to any calendar quarter in which the claimant earned remuneration from such employer. The only limitation on the allocation was that the amount allocated to a given quarter could not exceed the remuneration actually paid in that quarter.

Subsequent to the amendment that placed §4(x)(1), supra, in its present form, Regulation 117, effective August 10, 1956, was adopted by the Bureau making provisions for the allocation envisioned by the amendment to §4(x)(1), supra.

The difficulty arises in the instant case from the amendment to Regulation 117 effective January 1, 1962, the pertinent part of which reads as follows: "Wages must be allocated to those subsequent quarters which are common to the calendar year and the base year in sequence and in the amount in which remuneration was received." There is nothing in the amended act that calls for allocation based on sequence and amount and the Dept. of Labor & Industry requested an opinion of the Department of Justice interpreting the rule. An opinion by David Stahl, Attorney General, dated August 31, 1962 held that amended Regulation 117 to be invalid as not being consistent with §4(x)(1) of the law, so that the original Regulation 117 remains as the proper operative regulation implementing the 1955 "allocation" amendment. We adopt the following portions of the Attorney General's opinion, reading as follows:

"It is clear that Regulation 117, as originally promulgated, did not contain the restrictive language as to sequence and amount in which remuneration was earned. We have been informed that the Bureau of

Employment Security did not seek to invoke the 'sequence' formula prior to the effective date (January 1, 1962) of the Amended Regulation.

"It has been held by the appellate courts of this Commonwealth that the Unemployment Compensation Law is a remedial statute and its provisions, except sections imposing taxes, shall be liberally and broadly construed so that workers unemployed through no fault of their own are provided with some measure of economic security. Jones v. Unemployment Compensation Board of Review, 163 Pa. Superior Ct. 271 (1948); American Steel and Wire Company of New Jersey v. Unemployment Compensation Board of Review, 161 Pa. Superior Ct. 622 (1948).

"Moreover, where a statute, or any of its provisions is unambiguous on its face, then it must be accorded its plain meaning without the necessity of indulging in the rules of construction. Such is the law as set forth in the Statutory Construction Act of May 28, 1937, P. L. 1019, as amended, 46 P.S. §551 et seq. See Yellow Cab Company v. Unemployment Compensation Board of Review, 170 Pa. Superior Ct. 625 (1952).

"Armed with these criteria, we find, therefore, from a reading of the amendment to Section 4(x)(1), enacted in 1955, that it is manifest that no restriction is placed upon the Bureau of Employment Security as to the manner of allocating the wages (remuneration) to any quarter, subject to the $3000 limitation, except that wages are not to be allocated in excess of the amount actually received in any one quarter. The word 'any', by its ordinary meaning and intent, does not limit the allocation as to 'sequence' and 'amount' in which remuneration is received.

"The Bureau of Employment Security's Amended Regulation 117 set forth above, which purports to limit the wage allocation to the 'sequence' and 'amount' in which the wages were earned, is restrictive and not

indicative of the plain meaning and intent which emanates from the use by the Legislature of the word 'any'. Such a conclusion becomes more obvious because, although the compensation benefits were increased in 1959, the Legislature did not see fit to change the allocation formula as contained in Section 4(x)(1) and heretofore applied under Regulation 117.[1]

"It has also been mathematically demonstrated that application of the formula reflected in Amended Regulation 117, would deny benefits to those claimants whose wages were heretofore eligible for allocation to any quarter. Such a deprivation of the substantive rights of compensation claimants exceeds the rule making power of the Bureau of Employment Security, and, in the absence of legislative authorization to the contrary, is, in our view, improper. Therefore, Amended Regulation 117 must be deemed not to be in accord with Section 4(x)(1) of the Unemployment Compensation Law, as amended."

Decision affirmed.

---

[1] The recent careful and detailed amendments to the law which included increased benefits did not change this section. Act 1, March 24, 1964, Special Session, P. L. 53.