388 A.2d 678

GLADIEUX FOOD SERVICES, INC.

v.

UNEMPLOYMENT COMPENSATION BOARD OF REVIEW of
the Commonwealth of Pennsylvania, Appellant,

v.

DISTRICT LODGE 141, INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE WORKERS,
Intervening-Party.

Supreme Court of Pennsylvania.

Argued Sept. 27, 1977.

Decided June 5, 1978.

Robert P. Kane, Atty. Gen., Daniel R. Schuckers, Sydney Reuben, Asst. Attys. Gen., Harrisburg, for appellant.

Thomas D. MacMullan, Pittsburgh, Richard Kirschner, Markowitz & Kirschner, Philadelphia, Robert H. Shoop, Jr., Thorp, Reed & Armstrong, Pittsburgh, for appellee.

Jerome H. Gerber and James L. Cowden, Handler, Gerber and Weinstock, Harrisburg, amicus curiae.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION

NIX, Justice.

 This is an appeal from the Commonwealth Court's reversal of the Unemployment Compensation Board of Review's (Board) grant of unemployment compensation benefits to David A. Laskey (claimant), an employee of appellee, Gladieux Food Services, Inc. (Gladieux). *Gladieux Food Services, Inc. v. Unemployment Comp. Bd. of Rev.,* 27 Pa. Cmwlth. 142, 365 A.2d 889 (1976).[1] The dispositive question in this appeal is whether section 402(d) of the Unemployment Compensation Law (Act) operates to render claimant ineligible for unemployment benefits.[2] Act of December 5,

1. This Court's jurisdiction is based upon the Appellate Court Jurisdiction Act of July 31, 1970, P.L. 673, No. 223, art. II, § 204(a), 17 P.S. § 211.204(a) (Supp.1977–78).

2. Appellee argues alternatively that section 402(d) of the Unemployment Compensation Law, Act of December 5, 1936, P.L. 2897, art. IV, § 402(d) as amended, 43 P.S. § 802(d) (1964) (Act), as applied by the

1936, P.L. 2897, art. IV, § 402(d), *as amended*, 43 P.S. § 802(d) (1964). The Commonwealth Court answered this question in the affirmative. For the reasons set forth below, we disagree and, therefore reverse the order of the Commonwealth Court and reinstate the Board's grant of unemployment compensation benefits to claimant.

The facts in this case are as follows: Claimant is a member of Teamsters Local 249 (Union), which represents the employees at Gladieux's in-flight kitchen facility at the Pittsburgh airport. Gladieux and the Union were parties to a collective bargaining agreement which expired at midnight on April 30, 1974. Prior to April 30th, the Union and Gladieux held numerous bargaining sessions but were unable to agree on a new contract. Just before the expiration date of the collective bargaining agreement, the Union offered to continue to work under the terms of the expiring agreement on the condition that any new agreement be made retroactive to May 1, 1974. Gladieux declined this offer and informed the Union that it was willing to continue to provide work under the same terms and conditions of the then current agreement, but would not agree to retroactivity. The Board also found that during the negotiations Gladieux informed the Union that if there was no contract by April 30, 1974, there would be no work.

On the evening of April 30, 1974, Gladieux offered a new contract to the Union. At a meeting later that evening, the members of the Union rejected this offer. At the same meeting, the members voted to continue to work, and on the night of April 30, 1974, the employees reported for work and worked their usual shift. Thereafter, between May 1st and May 8, 1974, Gladieux eliminated certain employee benefits,

Unemployment Compensation Board of Review (Board) in the instant case violates the Supremacy Clause of the United States Constitution due to encroachment upon the regulation of collective bargaining, a field which appellee asserts has been preempted by Congress. This Court recently rejected a substantially similar contention. *Unemployment Com. Bd. of Rev. v. Sun Oil Co.*, 476 Pa. 589, 593, 383 A.2d 519, 521 (1978). We find *Sun Oil* to be controlling here, and therefore, find no merit in appellee's federal preemption challenge.

reduced employees' hourly wages, and eliminated two working shifts.[3] Finally, on May 9, 1974, Gladieux informed its employees that due to the airlines' failure to place service orders, Gladieux was closing its facilities and suspending its employees. Between the night of April 30, 1974, and Gladieux's cessation of operations on May 9, 1974, claimant and his co-employees continued to report for work.[4]

Section 402(d) of the Act states in pertinent part:

"An employee shall be ineligible for compensation for any week—

(d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed . . ." 43 P.S. § 802(d) (1964).

3. The following findings by the Board relate to the employer's conduct between May 1, 1974 and May 9, 1974:

12. On May 1, 1974, the employer, by letter, notified, the employees that the company would not pay the employee's life insurance disability, medical $20 per day hospitalization, and Blue Cross and Blue Shield.

13. On May 5, 1974, the employer reduced the employee's wage from the average hourly wage of $3.56 to $2 per hour.

14. On May 6, 1974, the employer again reduced the employee's hourly rate from $2 to $1.90 per hour.

15. On May 8, 1974, the employer eliminated the first shift beginning at approximately 5:00 in the morning and eliminated the starting time of the second shift, and informed the employees that they were to only report for the midnight shift.

16. On May 8, 1974, the employer set up a wire fence enclosure measuring approximately 20 feet by 30 feet on its premises and when the employees reported for work they were directed into this wire enclosure; the employer believed that this was necessary because of certain incidents of vandalism which had occurred. No arrests were made in connection with the alleged vandalism.

17. Approximately 120 employees were directed into this enclosure, and were told to sit and wait there. The employees only had wire baskets to sit on in this enclosure.

18. The employer's decisions of May 1, 1974 to eliminate certain employer payments, of May 5, 1974 to reduce the employees' wages, and of May 6, 1974 to further reduce the employees' wages were unilateral decisions by the employer and the union did not agree to these changes.

4. On August 17, 1974, Gladieux and the Union agreed upon a new collective bargaining agreement.

Under the language of this section, the cessation of employment must occur because of a labor dispute. Thus, in instances where a work stoppage resulted from a cause other than a labor dispute, section 402(d) is inapplicable and does not provide a basis for denying unemployment benefits. The Commonwealth Court ignored this point and proceeded to wrestle with the problem of whether the work stoppage was a strike or a lockout.[5] In our judgment this question need not be reached since we are satisfied that this was not a work stoppage under the terms of section 402(d) since it did not "exist because of a labor dispute."

The record reflects that although the Union and Gladieux failed to agree upon the terms of a new contract before the pre-existing contract's expiration, the Union members continued to work and the employer continued operation of the business, albeit at a diminishing rate, until May 9, 1974. The undisputed finding of the Board was that the work stoppage occurred because there was no work available for the employees to perform. Although the labor situation was unsettled, the employment relationship had continued for a number of days and did not cease until there was a lack of work.

To construe the instant factual situation as a work stoppage "exist[ing] because of a labor dispute" would require us to go beyond the unquestioned immediate cause, i. e., the absence of work, and attempt to discern those factors which

**5.** Nearly two decades ago, this Court in dictum suggested that the terms "stoppage of work" in section 402(d)(1), 43 P.S. § 802(b)(1) (Supp.1977–78), referred only to a cessation of work by employees. *Pramco, Inc. v. Unemployment Comp. Bd. of Rev.*, 396 Pa. 560, 564, 154 A.2d 875, 876 (1959). This dictum may be misleading in applying section 402(d) because subsequent cases made it clear that section 402(d) may apply regardless of the form of the work stoppage, i. e., regardless of whether it was the employees who actually ceased working or the employer who stopped operations. *Compare Hershey Estates v. Unemployment Comp. Bd. of Rev.*, 400 Pa. 446, 163 A.2d 535 (1960) (employer ceased operations) *and Erie Forge and Steel Corp. v. Unemployment Comp. Bd. of Rev.*, 400 Pa. 440, 163 A.2d 91 (1960) (employer ceased operations) *with Unemployment Comp. Bd. of Rev. v. Sun Oil Co., supra* (employees stopped working) *and Philco Corp. v. Unemployment Comp. Bd. of Rev.*, 430 Pa. 101, 242 A.2d 454 (1968) (employees stopped working).

may have contributed to bringing about the unavailability of work. This we decline to do. As noted by the Superior Court in *Hogan Unemployment Compensation Case*, 169 Pa.Super. 554, 560, 83 A.2d 386, 390 (1951):

"'Because' in the applicable section, supra, commands the Board to ascertain the direct, immediate, final and effective *cause* of, the potent and activating reason for, the work stoppage." (Emphasis in original).

While it must be conceded under these facts that the nexus between the airlines' decision not to use Gladieux's facilities and the unsettled labor situation, is relatively easily identifiable, this fact alone does not justify abandoning the salutary general rule that we should confine our inquiry to the immediate cause and avoid the maze that would result from an attempt to ascertain indirect or chronologically remote causes.

We believe that the interpretation being adopted in this opinion is consistent with the purposes sought to be achieved by the enactment of the Unemployment Compensation Law. This Act was designed to alleviate the rigors of unemployment and most specifically to assuage the distress of the individual unemployed worker. *Majoris v. Unemployment Compensation Bd. of Review*, 192 Pa.Super. 269, 162 A.2d 86 (1960); *Fazio v. Unemployment Compensation Bd. of Review*, 164 Pa.Super. 9, 63 A.2d 489 (1949); *Glen Alden Coal Co. v. Unemployment Compensation Bd. of Review*, 160 Pa.Super. 379, 51 A.2d 518 (1947); *Miller v. Unemployment Compensation Board of Review*, 152 Pa.Super. 315, 31 A.2d 740 (1943); *Unemployment Compensation Bd. of Review v. Buss*, 26 Pa.Cmwlth. 160, 362 A.2d 1113 (1976); *Graham v. Com., Unemployment Compensation Bd. of Review*, 14 Pa. Cmwlth. 445, 322 A.2d 807 (1974). The Act is remedial in nature and thus should be liberally and broadly construed. Statutory Construction Act of 1970, 1 Pa.C.S.A. § 1928(c) (Supp.1977–78); *Warner Co. v. Unemployment Compensation Bd. of Review*, 396 Pa. 545, 153 A.2d 906 (1959); *Department of Labor and Industry, Bureau of Unemployment Sec. v. Unemployment Compensation Bd. of Review*, 204

Pa.Super. 196, 203 A.2d 378 (1964); *Kozlowski v. Unemployment Compensation Bd. of Review*, 191 Pa.Super. 83, 155 A.2d 373 (1959); *Jones v. Unemployment Compensation Bd. of Review*, 163 Pa.Super. 271, 60 A.2d 568 (1948); *American Steel & Wire Co. of N. J. v. Unemployment Compensation Bd. of Review*, 161 Pa.Super. 622, 56 A.2d 288 (1948); *Bliley Elec. Co. v. Unemployment Compensation Bd. of Review*, 158 Pa.Super. 548, 45 A.2d 898 (1946); *MacFarland v. Unemployment Compensation Bd. of Review*, 158 Pa.Super. 418, 45 A.2d 423 (1946). Therefore, provisions such as section 402(d) which preclude the employee from receiving benefits should be narrowly interpreted. A claimant should not be denied benefits unless he is excluded by the plain and unambiguous language of the law. *General Elec. Co. v. Unemployment Compensation Bd. of Review*, 160 Pa.Super. 636, 53 A.2d 819 (1947); *Bliley Elec. Co. v. Unemployment Compensation Bd. of Review, supra; MacFarland v. Unemployment Compensation Bd. of Review, supra; G. C. Murphy Co. v. Com., Unemployment Compensation Bd. of Review*, 13 Pa.Cmwlth. 537, 319 A.2d 438 (1974). To interpret section 402(d) as requiring inquiry beyond the immediate and final cause of the work stoppage would produce a contrary result and frustrate the purposes of this legislation. We thus hold that in view of the uncontested finding that the immediate, final and effective cause of the work stoppage in the instant case was the unavailability of work, the instant factual situation is not governed by section 402(d) and that that section does not bar recovery by the present claimant.

The order of the Commonwealth Court is reversed and the award of the Unemployment Compensation Board of Review is reinstated.

PACKEL, former J., did not participate in the decision of this case.

POMEROY, J., filed a dissenting opinion.

POMEROY, Justice, dissenting.

Among the facts established by the Unemployment Compensation Board of Review was that the cancellation of

orders by airline companies, and the consequent cessation of work at the employer's place of business, was a direct result of the inability of the parties to reach some agreement which would maintain the status quo as of April 30, 1974 for a reasonable period. Indeed, the majority concedes that the nexus between these two facts is "relatively easily identifiable." Opinion, *ante* at 330. As I see it, the inability to maintain the status quo was in turn the result of the employees' refusal to continue to work for a time under the terms and conditions of the then existent contract. See *Vrotney Unemployment Compensation Case*, 400 Pa. 440, 163 A.2d 91 (1960). While the actions which the employer unilaterally took subsequent to April 30 are regrettable and not to be condoned, they do not change the fact that the airlines ceased conducting business with Gladieux as the result of the labor dispute which existed on April 30. To ignore the fact that the work stoppage here involved was a direct result of the dispute is to ignore the clearly expressed legislative desire to deny unemployment benefits to persons who precipitate their own unemployment.

I agree with and would adopt the opinion of BLATT, J., in the Commonwealth Court and would deny unemployment benefits. Hence, this dissent.