Garrett E. Sayers, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs November 16, 1983, to Judges ROGERS, BARRY and BARBIERI, sitting as a panel of three.

*Garrett E. Sayers,* petitioner, for himself.

*Richard F. Faux,* Associate Counsel, with him *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE BARRY, April 24, 1984:

Garrett E. Sayers (claimant) appeals a decision of the Unemployment Compensation Board of Review (Board) which affirmed a referee's determination that claimant was ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e), which provides in pertinent part: "[A]n employe shall be ineligible for compensation for any week . . . (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work. . . ." We reverse.

Claimant was employed by the Bureau of Aviation, Department of Transportation, Commonwealth of Pennsylvania (DOT), for almost eighteen years. In his position as an aviation specialist, claimant was recognized as an expert in the area of aviation safety. For a period of time prior to his discharge, claimant had become dissatisfied with various aviation safety

conditions such as insufficient maintenance mechanics, lack of instructions or specifications in the operating manuals concerning the Commonwealth's helicopters, and the question whether pilots who flew the Commonwealth planes had taken and passed the physical examinations required by state and federal regulations. Instead of going to his immediate supervisor with these concerns, claimant made a number of complaints to the Inspector General's Office, which began an investigation into these matters. Claimant's supervisor, Harry Fentress, manager of the Flight Service Division of the Bureau of Aviation, had been subordinate to claimant for several months prior to a reorganization. After the Bureau of Aviation's reorganization in early 1980, he became claimant's supervisor.

Testimony at the hearing before the referee indicated that the relationship between claimant and his supervisor had become strained and that, on January 20, 1981, while acting as co-pilot, Mr. Fentress accidentally failed to switch on the pilot's frequency control button and the pilot was cut off from contact with the control tower while he was making a visual approach to the landing strip. Consequently, the pilot failed to hear directions from the tower to change runways. Mr. Fentress, however, was in contact with the tower and told the pilot of the changed instructions. The pilot changed his approach and made a successful landing without a threat to the safety of his plane and passengers. The referee found that: "10. Fentress' actions were not unusual; what he did could have happened to any co-pilot and while it was a violation of the air regulations, under the circumstances it constituted no danger to anyone." Claimant, however, reported the incident to the Inspector General's Office as a safety violation. He was told that it would be investigated.

Instead of awaiting the outcome of this investigation and others which he had reported previously, on February 5, 1981, claimant called the Governor's Office and stated his belief that all the safety regulations were not being followed by the Commonwealth in its planes, that some of the pilots were unqualified to fly the planes, and that he hoped there would not be a recurrence of the accident of four years before when a Commonwealth plane crashed and Commonwealth officials and others were killed. Claimant spoke to a deputy administrative assistant to the Governor. The assistant gathered from a conversation that there was cause for alarm, as the claimant also told him that he had called the Lieutenant Governor's Office and the Inspector General's Office regarding these matters. The assistant assumed that there might be a problem with a flight planned by the Governor for February 7, 1981, two days later, and that there might be some unknown danger connected with that flight. Consequently, he called the Lieutenant Governor's Office, the Inspector General's Office, and the Department of Transportation, in an effort to learn of any possible danger and to arrange for security precautions to assure a safe flight. Consequently, the plane which the Governor was to use on February 7, 1981, was fueled in Pittsburgh rather than Harrisburg, given an extraordinary inspection, and placed under twenty-four hour security guard. All of these measures constituted additional expense.

The day following claimant's call, his supervisor was called by the Deputy Secretary of Transportation. When Mr. Fentress attempted to question claimant concerning the nature and purpose of claimant's call in order to learn what safety precautions had been taken for the Governor's impending flight, claimant informed him that it was a matter between the Gov-

ernor's Office and himself and that Mr. Fentress would have to call the Governor's Office if he wanted to know the nature of the call. While claimant replied to specific questions posed by Mr. Fentress, his replies were guarded and evasive, leaving Mr. Fentress in doubt as to the cause of claimant's concern.

Claimant was subsequently suspended on February 9, 1981, because of his telephone call to the Governor's Office "and completely bypassing the chain of command by directly contacting the Governor's Office and alleging that the Governor's life was in danger if he flew in Bureau of Aviation air craft." (Letter of February 9, 1981 from Director of the Bureau of Personnel to claimant, introduced at the referee's hearing as claimant's exhibit No. 3.)

After an investigation, which revealed no unsafe condition, claimant was discharged effective March 25, 1981. He was not permitted to continue working pending the outcome of the investigation because of the serious nature of his actions and his supervisor's fear that he might represent a safety threat if he were allowed to remain on duty.

The Board denied unemployment compensation benefits and affirmed the referee's determination that claimant's act of taking his safety concerns directly to the Governor's office, expressing them in such a manner as to raise doubts as to the Governor's safety, and failing to be frank and open with his supervisor when questioned about the matter constituted "willful misconduct" in connection with his work, precluding him from receiving benefits under Section 402(e) of the Law, 43 P.S. §802(e).

When asked why he did not reveal to his supervisor the nature of his call to the Governor's office of February 5, 1981, concerning the January 20, 1981, incident in which Mr. Fentress was co-pilot, claimant

testified that the pilot of the plane was a friend and he feared for his welfare. The referee did not consider this testimony to constitute "good cause" for claimant's unorthodox behavior.

The criteria which characterize "willful misconduct" as set forth in *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review*, 10 Pa. Commonwealth Ct. 90, 97, 309 A.2d 165, 168-69 (1973), have been firmly established as follows:

> (1) the wanton and wilful disregard of the employer's interest, (2) the deliberate violation of rules, (3) the disregard of standards of behavior which an employer can rightfully expect from his employe, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations.

We must juxtapose against these standards a consideration of whether the behavior in question constitutes "good cause." This Court has held that "good cause" rests on "good faith." *King v. Unemployment Compensation Board of Review*, 51 Pa. Commonwealth Ct. 396, 414 A.2d 452 (1980). In applying the standard for determining good cause, we must evaluate the reasonableness of the cause in light of all the surrounding circumstances. *Frumento v. Unemployment Compensation Board of Review*, 466 Pa. 81, 351 A.2d 631 (1976).

In the case before us, the referee found that claimant's actions in which he bypassed the chain of command and telephoned the Governor's Office directly to voice his concern over the safety of Commonwealth flights constituted willful misconduct by claimant; his testimony that he did not wish to disclose the nature

of his call due to his desire to protect his friend did not constitute, for the referee, good cause. What the referee neglected to consider was the fact that claimant *at no time* testified that he specifically mentioned any impending danger concerning a flight which was planned by the Governor of Pennsylvania. Moreover, claimant stated that he was unaware of these plans. It is merely happenstance that the assistant who answered the telephone and acted upon the information conveyed to him by claimant drew the conclusion that claimant was referring specifically to the Governor's impending flight. While the matters discussed by claimant were apparently of a specific nature, claimant testified that he did not mention specifically the flight of the Governor and, in fact, testified that he had *no knowledge* that the Governor was about to take a flight two days later. The fact that claimant acted in what may be termed an excessively enthusiastic manner cannot in itself constitute willful misconduct. As the Superior Court stated in *MacFarland v. Unemployment Compensation Board of Review,* 158 Pa. Superior Ct. 418, 423, 45 A.2d 423, 426 (1946):

> It is one thing to say that unemployment resulting from a criminal act involving moral turpitude is a fault that forfeits compensation; it is quite a different thing to say that an employee who is discharged because he has become overzealous or neurotic, is unemployed through his own fault. The difference is not a difference in degree, it is a difference in the moral quality of the conduct. The first is a wrong, a fault, in morals as well as in law, while the second, if more than a fraility, is only an error of judgment.

Claimant's unfortunate timing which resulted in a disruption of the Office of the Governor and extra-

ordinary security measures for the Governor's flight cannot as a matter of law be held to constitute willful misconduct without just cause. We cannot state unequivocally that an employee who is overly concerned with safety while employed as a flight safety specialist is wrong. Rather, he may be termed overzealous or excessively enthusiastic, but this judgment is not ours to make as a matter of law.

Accordingly, we reverse the decision of the Board and award claimant benefits under the Unemployment Compensation Law. The case is remanded to the Board for computation of benefits.

### Order

Now, April 24, 1984, the order of the Unemployment Compensation Board of Review dated June 23, 1981, No. B-196345, is reversed and claimant, Garrett E. Sayers, is awarded benefits in accordance with the Unemployment Compensation Law. The case is remanded to the Board for computation of benefits.

Jurisdiction relinquished.