522 A.2d 544

Richard A. TRONZO, Thomas J. Keefe, and Paul Bobak, Appellees,

v.

COMMONWEALTH of Pennsylvania, UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 17, 1986.

Decided March 17, 1987.

John W. English, Jr., Barry M. Hartman, John P. Krill, Dept. of Labor & Industry, Peter C. Layman, Acting Chief

Counsel, Jonathan Zorach, Associate Counsel, Unemployment Compensation Bd., Harrisburg, for appellant.

Blair V. Pawlowski, Ebensburg, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

This is an appeal from the reversal by the Commonwealth Court of the Unemployment Compensation Board of Review's (Board) denial of unemployment compensation benefits to the claimants herein.[1] The substantive issue in this appeal is whether claimants Richard A. Tronzo, Thomas J. Keefe and Paul Bobak, employees of a union local, were entitled to unemployment benefits under section 402(d) of the Unemployment Compensation Law, Act of December 5, 1936, Second Exec.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(d), when they were laid off by their local because of lack of work. The Commonwealth Court disagreed with the Board's conclusion that benefits should have been denied and determined that the claimants were entitled to benefits. *Tronzo v. Unemployment Compensation Board of Review,* 86 Pa.Commw. 69, 483 A.2d 1051 (1984). For the reasons that follow, we affirm the Orders of the Commonwealth Court.

The undisputed facts in the case at bar are as follows: Claimant Tronzo[2] was employed by his union, the United Mine Workers of America ("Union"), Local Union 1368 ("Local"), as a mine inspector and chairman of the Mine Health and Safety Committee at the rate of Ten Dollars and

1. The Supreme Court has jurisdiction pursuant to section 724(a) of the Judicial Code, 42 P.S. § 724(a).

2. The facts and legal issues as to each claimant are essentially similar and were consolidated on July 21 and 22, 1981 by the Referee of the Pennsylvania Unemployment Compensation Board of Review. Thus, although we refer in this opinion only to claimant Tronzo, our reasoning and holding are applicable to each of these claimants.

Seventeen Cents ($10.17) per hour. At the same time, claimant was a full-time mine operator for the Bethlehem Mines Corporation at the rate of Ninety-six Dollars ($96.00) per day.

On expiration of a collective bargaining agreement between the Union and claimant's second employer, Bethlehem Mines, the Union called a national strike in which claimant's Local 1368 participated. The mines where claimant performed his duties as a mine inspector were closed. The Union local then laid off claimant because there was no work to be performed due to the strike against Bethlehem Mines.

Claimant applied for unemployment compensation benefits due to his lay-off by his union employer which were denied by the Bureau of Employment Security under Section 402(d) of the Pennsylvania Unemployment Compensation Law ("Act"), 43 P.S. § 802(d). The referee concurred with the Bureau's conclusion of claimant's ineligibility, and the Unemployment Compensation Board of Review affirmed on review. The Commonwealth Court reversed the Board granting unemployment benefits to claimant.

This appeal is concerned solely with claimant's application for unemployment benefits from his union work. There is no question as to claimant's ineligibility for benefits from his employment at Bethlehem Mines.

The parameters of our review are confined to a determination of whether any errors of law were committed and whether the Board's findings were supported by substantial evidence. *Borello v. Unemployment Compensation Board of Review*, 490 Pa. 607, 417 A.2d 205 (1980). "The appellate court's duty is to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony, to see if substantial evidence for the Board's conclusion exists." *LeGare v. Unemployment Board of Review*, 498 Pa. 72, 76, 444 A.2d 1151, 1152–53 (1982), *quoting Taylor v. Unemployment Compensation Board of Review*,

474 Pa. 351, 355, 378 A.2d 829, 831 (1977). For the reasons that follow we are constrained to conclude that the Board misapplied the applicable law in concluding that claimant was ineligible for benefits.

Section 402(d) of the Act, 43 P.S. § 802(d), provides in pertinent part:

> An employee shall be ineligible for compensation for any week—
>
> . . . . .
>
> (d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed:. . . .

43 P.S. § 802(d).

The language of this section clearly states that a stoppage of employment, to cause ineligibility for benefits, must result from a "labor dispute." Therefore, it is unmistakable that ". . . where a work stoppage resulted from a cause other than a labor dispute, section 402(d) is inapplicable and does not provide a basis for denying unemployment benefits." *Gladieux Food Services, Inc. v. Unemployment Compensation Board of Review,* 479 Pa. 324, 329, 388 A.2d 678, 680 (1978).

In the case at bar, claimant's unemployment was caused by a shortage of work due to a labor dispute with Bethlehem Mines in which claimant's employment situs was closed. Thus, he was laid off by his union employer because of a lack of work. However, it is clear that there was not a labor dispute between Local 1368, claimant's employer, and its employees. The bar against the receipt of benefits set forth in section 402(d), in the most unmistakable terms, is for a labor dispute involving claimant's employer. It does not involve a labor dispute against another unit, particularly where the employer encouraged that dispute.

Certainly the labor dispute was in the chain of events that led to the lack of work assigned as the reason for the layoff; but what is critical to this analysis is that it was not

a labor dispute against the employer against whom the claim for unemployment benefits were made. To the contrary, that employer, i.e., the local, supported that labor dispute and the claimant, was also obligated to support that labor dispute. To accept a contrary view would force an employee to be penalized for assisting in the very endeavor he had been instructed and paid to be involved in. Claimant's acts were in no way antithetical to his union employer's interest, but rather consistent with the express directions given by that employer. It is quite conceivable that if claimant had declined to follow his union employer's directions in connection with the work stoppage at the mine he would have been discharged and would have faced denial of unemployment compensation benefits under the willful misconduct disqualification provision. 43 P.S. § 802(e); *Le-Gare v. Unemployment Compensation Board of Review, supra; McLean v. Unemployment Compensation Board of Review,* 476 Pa. 617, 383 A.2d 533 (1978); *Frumento v. Unemployment Compensation Board of Review,* 466 Pa. 81, 351 A.2d 631 (1976). Such a Hobson's choice is unquestionably incompatible with the remedial purposes of the Act. *Gladieux Food Services, Inc. v. Unemployment Compensation Board of Review, supra.*

If claimant had been employed only by the Union, it would be ludicrous to argue that his efforts on behalf of that employer in the labor dispute against Bethlehem Mines Corporation would justify his denial of benefits after a layoff by the Union. Where the lack of work, which forms the basis for the layoff, is the result of a decision of the employer, there is no justification for denying unemployment benefits to the employee who merely assisted in implementing the employer's directions. Such a construction would violate the clear language of section 402(d), 1 Pa.C.S. § 1903(a); *Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 507 A.2d 323 (1986); *Philadelphia Housing Authority v. Commonwealth, Pennsylvania Labor Relations Board,* 508 Pa. 576, 499 A.2d 294 (1985); *Commonwealth v. Stanley,* 498 Pa. 326, 446 A.2d 583 (1982); *Commonwealth v. College,* 497 Pa. 71, 439 A.2d

107 (1981); *In re: Estate of Baker*, 496 Pa. 577, 437 A.2d 1191 (1981), and produce a result contrary to the expressed remedial purposes of the act. 1 Pa.C.S. § 1928(c); *LeGare v. Unemployment Compensation Board of Review, supra; Gladieux Food Services, Inc. v. Unemployment Compensation Board of Review, supra; Warner Co. v. Unemployment Compensation Board of Review*, 396 Pa. 545, 153 A.2d 906 (1959). The fact of the dual employment does not alter the situation.

Any concern that dual employment of this nature would violate the Act's policy of preventing employees from receiving compensation for unemployment due to work stoppages caused by labor disputes in which they participated is unwarranted. The claimant is unquestionably precluded from receiving unemployment compensation from the employer against whom the labor dispute is directed. As to the other employer, who was aware of the dual employment and who directed the action of the employee, we can determine no policy set forth within the Act that would dictate that unemployment compensation should be denied.

For these reasons we are also not persuaded that section 3 of the Act, 43 P.S. § 752, requires a finding that claimant be denied benefits. Section 3 provides:

> Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed through no fault of their own. The principle of the accumulation of financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment

and indigency.  The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

The declared public policy of the Commonwealth of Pennsylvania is to provide economic sustenance to persons unemployed through no fault of their own.  43 P.S. § 752; *Renne v. Unemployment Compensation Review Board,* 499 Pa. 299, 453 A.2d 318 (1982); *Gladieux, supra.*  Section 3 of the Act is the foundation upon which distinct provisions of the Unemployment Compensation Law rest for interpretative purposes.  *Lybarger Unemployment Compensation Case,* 418 Pa. 471, 476, 211 A.2d 463, 466 (1965).  The purpose of this section is to provide economic reassurance for those workers who are involuntarily unemployed.  *Penn Hills School District v. Unemployment Compensation Board of Review,* 496 Pa. 620, 625, 437 A.2d 1213, 1215 (1981); *Lybarger, supra.*  The intent of the Act is also to sustain those employees who are idle through no fault of their own.  *Richards v. Unemployment Compensation Board of Review,* 491 Pa. 162, 169, 420 A.2d 391, 395 (1980).

The fault referred to in section 3, although applicable to claimant's relationship with Bethlehem Mines, is not applicable to his employee relationship with the Local.  As to the claimant's relationship with Local 1368 he was only performing those acts required by that employment.  As previously stated, the labor dispute was not against the Local, and claimant's participation in that dispute was a part of his duties as an employee of the Local.  The fault concept articulated in section 3 is limited to that arising out of the employer-employee relationship at issue, and not imputed from some other employer-employee relationship.  As noted by this Court in *Penn Hills School District, supra,* an employee is ineligible for benefits under the Act "... only by *explicit* language in the Act which clearly and plainly

excludes that worker from its coverage." 496 Pa. at 625, 437 A.2d at 1215 (emphasis in original). There is no explicit provision in the Act providing that the fault that may have occurred in one employment relationship may be used to bar recovery as to a separate and distinct employment relationship.

There is nothing in this record to suggest that either employer deemed the claimant's dual employment to be incompatible. If such had been the case the objecting employer could have directed the employee to sever the other relationship. To the contrary, this record reflects that both employers were aware of the dual employment and condoned it. Thus, for purposes of entitlement for benefits, it is appropriate to look only to the conduct of the employee in his relationship with the employer from whose employment he is seeking the benefits. There being no fault demonstrated in claimants discharge of his duties from Local 1368 there is no basis for denying benefits under section 3 during the period that he was laid off from that employment due to lack of work.

Accordingly, the orders of the Commonwealth Court are affirmed and the matters are remanded to the Unemployment Compensation Board of Review for the determination of the benefits due claimants.

HUTCHINSON, J., files a dissenting opinion in which McDERMOTT, J., joins.

HUTCHINSON, Justice, dissenting.

I dissent. By quoting only part of section 402(d) of the Unemployment Compensation Law I believe that the majority has overlooked the statute's critical language. Section 402(d) states:

[a]n employe shall be ineligible for compensation for any week—

.        .        .        .        .

(d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than

a lock-out) at the factory, establishment or other premises at which he is or was last employed: *Provided, That this subsection shall not apply if it is shown that (1) he is not participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (2) he is not a member of an organization which is participating in, or directly interested in, the labor dispute which caused the stoppage of work,* and (3) he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in, or directly interested in, the dispute.

43 P.S. § 802(d) (emphasis added). Appellees participated in the strike which caused the stoppage of work and were members of the union which was on strike. To my mind they are clearly ineligible for benefits.

McDERMOTT, J., joins in this Dissenting Opinion.