Chemical Leaman Tank Lines, Inc., Matlack, Inc., Materials Transport Service, Inc. and Schwerman Trucking Company, Petitioners *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent. Eugene C. Achey et al., Intervenors.

Argued February 4, 1980, before Judges Crumlish, Jr., Wilkinson, Jr. and Mencer, sitting as a panel of three.

*Alfred J. D'Angelo, Cunniff, Bray & McAleese,* for petitioners.

*Elsa Newman-Silverstine,* with her *David R. Confer,* Assistant Attorneys General, *Richard Wagner,* Chief Counsel, and *Edward G. Biester, Jr.,* Attorney General, for respondent.

*Andrew L. Markowitz* with him *Deborah R. Willig,* and *Stephen C. Richman, Markowitz & Richman,* for intervenors.

OPINION BY JUDGE MENCER, May 8, 1980:

Before us is a petition for review from the Unemployment Compensation Board of Review's (Board) grant of unemployment compensation benefits to Eu-

gene C. Achey.[1] The dispositive question is whether Section 402(d) of the Unemployment Compensation Law (Act)[2] operates to render claimant ineligible for unemployment benefits. We answer the question in the negative.

Claimants are truck driver employees of the Employers who are common carriers by motor vehicle and maintain and operate trucking terminals in the Lehigh Valley of Pennsylvania. The Employers are engaged in the business of transporting cement manufactured by various cement-producing mills to customers of these cement producers.

The business of the Employers fluctuates on a daily basis, based upon customer demand for cement and whether a particular cement producer will request one of the Employers to transport the product. As common carriers, the Employers do not enter into any contract with the cement producers, the terms of which obligate the producers to give the Employers a certain amount of work. Rather, the Employers, who have obtained the requisite authorities from various state and federal regulatory bodies, hold themselves out as available to transport cement when called upon by the cement producers on a daily basis. Usually, the cement producers contact the Employers by early evening to give them orders for the next day. The Employers, pursuant to the agreement hereinafter referred to, then dispatch the available drivers in accordance with their seniority.

All claimants are represented for the purpose of collective bargaining by Teamsters Local Union No.

---

[1] This is a test case in which Eugene C. Achey is one of 23 claimants who are employees of the petitioners, Chemical Leaman Tank Lines, Inc., Matlack, Inc., Materials Transport Service, Inc., and Schwerman Trucking Company (Employers).

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(d).

773 (Local 773), and all claimants are members of Local 773.

Local 773 and the Employers, as well as additional unions and employers, are and have been party to a multiemployer-multiunion collective bargaining agreement known as the Eastern Area Cement Haul Agreement (Agreement). The Agreement covers the claimants, as well as other drivers and mechanics employed by the Employers, and governs their wages, hours and working conditions. The Agreement material to this case was operative by its terms for the period March 1, 1974 through February 28, 1977. Prior to the expiration date of the Agreement and thereafter, the Employers and Local 773, as well as the other unions and employers in the multiemployer-multiunion unit, engaged in collective bargaining negotiations for the purpose of arriving at a successor agreement containing changes in terms and conditions of employment of the claimants.

After extensive negotiations, on March 5, 1977, the employers covered by the Agreement presented in negotiations their final economic offer for changes in the Agreement to Local 773 and the other local unions covered by the Agreement. The offer was rejected by Local 773 and the other unions in the multiunion unit as unacceptable and, in order to bring economic pressure to support its positions, Local 773 and the other unions advised the Employers that, as a result of the inability to agree upon a new contract, their truck driver and maintenance employees would engage in a strike at their Lehigh Valley terminals and withhold their services of employment. A strike began at each of the Employers' terminals on March 5, 1977. A picket line was set up at each of the Employers'. terminals on March 5, 1977. The picketing and strike continued until March 21, 1977 when a new contract was ratified and agreed upon. The claimants, because of lack of

demand by the cement producers, worked sporadically, if at all, during the months of January and February 1977.

The Board made the following finding of fact which we determine to be supported by substantial evidence in this record: "9. Claimant[s] did not participate in the work stoppage or the picketing in any way."

Section 402(d) of the Act states, in pertinent part: ".An employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed. . . ."

Under the language of this section, the cessation of employment must occur because of a labor dispute. Thus, in instances where a work stoppage resulted from a cause other than a labor dispute, Section 402 (d) is inapplicable and does not provide a basis for denying unemployment benefits. *Gladieux Food Services, Inc. v. Unemployment Compensation Board of Review*, 479 Pa. 324, 388 A.2d 678 (1978). Here the Board concluded that, on this record, the claimants' unemployment was due to lack of work[3] and that the subsequent labor dispute did not change the legal causation of their unemployment. Since the claimants did not participate in the work stoppage, the claimants could not be considered unemployed by reason of a labor dispute. *Alloway Unemployment Compensation Case*, 208 Pa. Superior Ct. 451, 222 A.2d 449 (1966).

---

[3] The record discloses that, even subsequent to the work stoppage that occurred on March 5, 1977, the claimants here were available and willing to work but did not receive any call from the Employers to report for work.

We are compelled to decide, in accord with the Board, that the claimants' employment ceased because of lack of work and not because of a work stoppage under the terms of Section 402(d) since it did not "exist because of a labor dispute." It was the absence of work that was the immediate cause of claimants' unemployment, and to construe the instant factual situation as a work stoppage existing because of a labor dispute would require us to go beyond the immediate cause, *i.e.*, the absence of work. Following the direction given to us in *Gladieux Food Services, Inc. v. Unemployment Compensation Board of Review, supra*, this we decline to do.

Accordingly, we will affirm the order of the Board.

#### ORDER

AND Now, this 8th day of May, 1980, the order of the Unemployment Compensation Board of Review, dated August 2, 1978, granting benefits to Eugene C. Achey (Decision No. B-162286) is hereby affirmed. Also, similar orders entered relative to Decisions Nos. B-162287 to B-16293 and B-162297 to B-16311 are hereby affirmed.

#### AMENDED ORDER

Now, this 23rd day of June, 1980, the order of this Court entered May 8, 1980 in the above captioned matter is hereby amended to read as follows:

AND Now, this 8th day of May, 1980, the order of the Unemployment Compensation Board of Review, dated August 2, 1978, granting benefits to Eugene C. Achey (Decision No. B-162286) is hereby affirmed. Also, similar orders entered relative to Decisions Nos. B-162287 to B-162293 and B-162297 to B-162311 are hereby affirmed.

President Judge BOWMAN did not participate in the decision in this case.