Michael O. Mummert et al., Petitioners *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued December 17, 1981, before President Judge CRUMLISH, and Judges ROGERS and CRAIG, sitting as a panel of three.

*Victor Dell'Alba, Dell'Alba, Heim, Lecates & Baldauff,* for petitioners.

*Richard Lengler,* Associate Counsel, with him *Paul A. Sneed,* Associate Counsel, and *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE CRAIG, February 18, 1982:

The question here is whether the Unemployment Compensation Board of Review correctly concluded that claimants,[1] employees of the J. C. Eisenhart Company, were ineligible for benefits under Section 402(d) of the Unemployment Compensation Law,[2] on the basis that their layoff period, *after a strike had ended,* was nevertheless due to the strike.

. From the board's key findings and the board's brief, we draw the facts:

---

[1] This appeal involves the consolidated cases of claimants Michael O. Mummert, David L. Ports, Thomas J. Staub, Dean S. Stahl, David George Bubb, Raymond E. Gass, Richard C. Brady, Thomas E. Long, Benton R. Wolff, and Robert Meckley.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(d).

As the board notes in its brief, the normal production operation work of this wallpaper company "begins in the printing department and proceeds from there to the finishing department." The board's findings, referring to "a huge backlog in the finishing department," state that "[t]his backlog existed prior to the commencement of the work stoppage," which consisted of a strike called by claimants' union. Claimants, all but one of whom[3] were employed in the printing department, were not called back when the strike ended. The board's brief notes that, if there had been no strike, the company would have been required to take steps to reduce the pre-existing backlog, and adds:

> The several options available to the company would have included laying off some people from the printing department; working the finishing department overtime; waiting until the scheduled two-week vacation shutdown in August, and then asking for volunteers to work in the finishing the second week of the shutdown; or some combination of any or all of these measures (N.T. 9, 10 - 10/25/79). The work stoppage, however, eliminated at least one of the company's options, working during the vacation shutdown, because the stoppage continued through the period of the scheduled shutdown (N.T. 10 - 10/25/79). Further, the work stoppage changed the economic context in which the company eventually had to deal with the backlog. This resulted when the company continued to fill orders for customers out of stock during the work stoppage thus seriously

---

[3] Claimant Staub was not employed in the printing department. He was the least senior employee in the finishing department, and there was substantial evidence in the record to support the findings of the referee and board that his delayed rehiring resulted, not from the pre-existing backlog, but from the strike itself.

depleting the stock reserve (N.T. 4, 5 - 10/25/79).

As the same brief puts it, "[c]onsequently, when the work stoppage ended, the company *elected* to deal with the backlog in finishing by not immediately resuming operations in the printing department." (Emphasis added.)

The board's Finding No. 6 reads: "[T]he employer would have taken steps to eliminate the necessity of a lay-off of the printing department had the strike not occurred." The board, in its discussion, amplified that finding by stating that "there was a way for [the employer] to avoid lay-offs," but "the strike resulted in the loss of these options...." The "way" was, as noted above, relying upon volunteers during the vacation period. As board counsel notes:

> Admittedly, there was a possibility that this plan might not have worked and a layoff might have become necessary. But the strike prevented the employer from even putting it into effect.

Counsel's acknowledgment is based upon testimony of the employer's representative, who said that "people today want their [vacation] time, which I can understand." He added:

> In essence, I am saying the possibility of getting enough volunteers to run the plant during that second week is pretty skinny.

The applicable rules of law are clear. Section 402(d) makes claimants ineligible for compensation when "unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lockout)." Moreover, an employer is entitled to a reasonable time to restore its plant to normal operations following a strike.[4]

---

[4] *See Fort Pitt Manufacturing Co. v. Unemployment Compensation Board of Review*, 176 Pa. Superior Ct. 162, 106 A.2d 672

The problem here is to determine if "[i]t was the absence of work that was the immediate cause of claimants' unemployment," *Chemical Leaman Tank Lines, Inc. v. Unemployment Compensation Board of Review*, 51 Pa. Commonwealth Ct. 257, 262, 414 A.2d 169, 171 (1980), citing *Gladieux Food Services, Inc. v. Unemployment Compensation Board of Review*, 479 Pa. 324, 388 A.2d 678 (1978). *Gladieux* indicated that Section 402(d) requires the board:

> '[T]o ascertain the direct, immediate, final and effective *cause* of, the potent and activating reason for, the work stoppage.' (Emphasis in original.)

479 Pa. at 330, 388 A.2d at 681, citing *Hogan Unemployment Compensation Case*, 169 Pa. Superior Ct. 554, 560, 83 A.2d 386, 390 (1951).

In resolving what appears to be a mixed question of law and fact,[5] we do not find either the board's determination of cause in this case, or our scope of review herein, to be as clear as the substantive rules. Although we have held that the burden of proof with respect to eligibility under Section 402(d) remains upon the employee claimants who seek compensation during the strike period,[6] there appears to be no previous consideration of where the burden lies with respect to establishing an employer's need for a reasonable period to restore operations when the claim period falls after the strike is over. However, because the position of board counsel here is that our scope of review is to determine whether or not there is substantial evidence

(1954); *Bako Unemployment Case*, 171 Pa. Superior Ct. 222, 90 A.2d 309 (1952).

[5] *See Philco Corp. v. Unemployment Compensation Board of Review*, 430 Pa. 101, 105 n. 2, 242 A.2d 454, 456 (1968).

[6] *Borello v. Unemployment Compensation Board of Review*, 40 Pa. Commonwealth Ct. 353, 397 A.2d 471 (1979), *rev'd. on other grounds*, 490 Pa. 607, 417 A.2d 205 (1980).

to support the findings of the board, we will not explore the point further in this case.

If the board's findings with respect to the taking of "steps" and the loss of "options" by the employer are intended to import that, without a strike, the employer would have *successfully* accomplished the steps necessary to avoid the printing department backlog, the record lacks substantial evidence to support the point. The employer's own testimony straightforwardly acknowledged that the employer's "options" to prevent a layoff were contingent, not definite or certain, strike or not. At best, there is substantial evidence only to support a finding to the effect that the employer would have attempted to solve the problem if the regular vacation period had occurred. Because the backlog, which had been a recurring problem in the past, existed before the strike as a consequence of the employer's method of production, it appears that, in the words of *Chemical Leaman Tank Lines* and *Gladieux*, it was "the absence of work" that was the direct, potent and activating cause for the layoff of these claimants in the post-strike period.

Therefore, we must reverse the board's order to the extent that it applies to the printing department claimants.[7]

ORDER

Now, February 18, 1982, the orders of the Unemployment Compensation Board of Review dated February 26, 1980, Nos. B-181372, B-181373, B-181375, B-181376, B-181377, B-181378, B-181379,

---

[7] However, the findings of the referee and board are affirmed as they apply to claimant Staub because there was substantial evidence to conclude that claimant Staub's delayed rehiring in the finishing department resulted from the strike.

B-181380 and B-181381 are reversed, and the cases are remanded for computation of benefits; claim No. B-181374, dated February 26, 1980, relating to claimant Staub is affirmed.

Judge PALLADINO did not participate in the decision in this case.