**OLD FORGE BANK, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 7, 1994.

Decided Oct. 20, 1995.

Louis A. Cimini, for petitioner.

Maribeth Wilt–Seibert, Assistant Counsel, and Clifford F. Blaze, Deputy Chief Counsel, for respondent.

Before DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

DOYLE, Judge.

This is an appeal by Old Forge Bank (Employer) from an order of the Unemployment Compensation Board of Review (Board), granting unemployment compensation benefits to Nadine R. Giampetro (Claimant) pursuant to the Pennsylvania Unemployment Compensation Law (Law).[1]

Claimant was employed by Employer as a full-time bank teller from March 4, 1991 through April 9, 1993, during which time she was absent from work a total of fifty-two days, excluding vacation. Claimant testified that all of her absences were for medical reasons and that she provided a medical excuse for every absence that she had. Specifically, during her first year (from March 4, 1991 through December 31, 1991) Claimant was absent a total of twenty-one days and in July of 1991, Claimant was given a verbal warning regarding her absenteeism. Subsequently, on May 20, 1992, as a result of her persistent absenteeism, Employer placed Claimant on probation for 90 days, during which time she was absent two and a half days, resulting in a total of twenty-one days absent for 1992. Both parties agree, however, that after May 20, 1992, Claimant was required to provide a note from her doctor for even a one day absence,[2] which, Claimant testified, was provided although not all of such notes from her physician, Dr. Lewis Druffner, were kept in her personnel file. From January 1, 1993 through March 19, 1993, Claimant missed a total of ten and a half days of work.

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751–914.

2. Employer had an established policy requiring an employee to provide medical certification if the employee were absent from work for three consecutive days.

The Board, however, found only that "throughout her employment, the claimant was absent several days due to various medical reasons" (Board's Finding of Fact No. 4) without making a finding on whether all Claimant's absences were caused by illness. The Board also found that Claimant submitted "six [medical] excuses for approximately ten absences" subsequent to May of 1992.

On March 19, 1993, as a result of Claimant's extensive absenteeism, Employer sent Claimant a memorandum requesting a full medical report regarding her alleged medical condition and medical certification documenting that she had a continuing disability which prevented her from attending work as scheduled. On April 1, 1993, Claimant presented a note from her doctor, which stated that she had been treated for migraine headaches and was given medication for the same. However, the note did not specify that her condition was continuing or that it required her to miss work. On Friday, April 9, 1993, Employer advised Claimant that her hours were being reduced and that she was being demoted from full-time employment to a part-time position "to take care of her medical problems." Claimant objected to the reduction of

her hours and informed her supervisor that she needed to work full-time.[3]

On Monday, April 12, 1993, Claimant was scheduled to work her first part-time day. When she arrived at work, Claimant informed two of her supervisors that she felt her reduction in hours was not warranted and that she was taking the matter to "arbitration."[4] Thereafter, Claimant did not return to her employment, and applied for compensation benefits with the Bureau of Unemployment Compensation Benefits and Allowances (Bureau).

On April 28, 1993, the Bureau issued a determination granting unemployment compensation benefits, concluding that Claimant voluntarily left her employment for necessitous and compelling reasons. Employer appealed that determination to the referee who reversed the Bureau. Claimant then appealed to the Board, which reversed the referee and granted benefits,[5] holding that Claimant voluntarily left her employment for reasons of a necessitous and compelling nature because Employer had unilaterally changed Claimant's employment status from full-time to part-time,[6] and that such a substantial unilateral change had "the same effect [as] a demotion although not .performed for the

---

3. The pertinent portions of Claimant's testimony are as follows:

> R. So Mrs. Lamar told me that I was being, well she didn't say forced, she said I was being offered a part time position, or nothing. When I questioned what nothing was, she told me that I should know. I don't know what she meant. I am assuming that she meant nothing else, just part time. I told her I didn't accept a part time position, that I was hired as a full time employee, and I was a good full time employee.
> ....
> R. Were you told [on Friday, April 9, 1993] that you were being reduced to part time hours?
> C. Yes, or nothing.
> ....
> R. Did you take the part time hours?
> C. I told her that I didn't want part time, I needed full time.

(Notes of Testimony (N.T.) at 4–5; Reproduced Record (R.R.) at 17A–18A.)

4. It is clear from Claimant's complete testimony and the testimony of Employer's witnesses, that what was intended and understood by "arbitra-

tion" was a claim for unemployment compensation benefits.

5. The Board issued a decision reversing the referee on August 17, 1993. On August 23, 1993, Employer requested reconsideration of the Board's decision, and on reconsideration, the Board again granted Claimant benefits.

6. Neither the referee nor the Board made specific findings describing what was meant by "part-time" work, although both found that Claimant's hours were reduced from a "full-time schedule to a part-time schedule" and that the part-time work was not acceptable to Claimant. Our own review of the uncontradicted testimony reveals that Claimant's hours were reduced by 40% and that Claimant was handed a typed memo, dated April 7, 1993, from her department supervisor, Barbara Napditano, scheduling her for part-time work only nine days out of the remaining fifteen work days remaining in April of 1993. Furthermore, no explanation was given to Claimant regarding what employee benefits were being taken from her such as health care coverage, life insurance, etc. We would have to assume that while such benefits normally accompany full-time em-

purpose of demoting the claimant." The Board further concluded that the Employer "also failed to provide adequate competent evidence that the Claimant's transfer was justifiable." Thus, Claimant was not disqualified from receiving benefits under Section 402(b) of the Law.[7] It is the order of the Board which Employer now appeals to this Court.

The sole issue on appeal[8] is whether the Board erred as a matter of law when it held that Employer's unilateral change of Claimant's employment status gave her good cause, that is, a necessitous and compelling reason, to terminate her employment. Specifically, Employer argues that Claimant failed to prove she quit for a necessitous and compelling reason because Employer was **justified** in changing Claimant's status from a full-time employee to a part-time employee.

■ An employee who voluntarily terminates employment has the burden to prove that the voluntary quit was for a necessitous and compelling reason, and whether the em-

ployee had such cause is a conclusion of law subject to appellate review. *Malloy v. Unemployment Compensation Board of Review*, 105 Pa.Cmwlth. 183, 523 A.2d 834 (1987). A necessitous and compelling cause is one that "results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner." *Id.*, 523 A.2d at 836.

■ While a mere dissatisfaction with working conditions is not good cause for voluntary termination of employment, *Griffith Chevrolet–Olds, Inc. v. Unemployment Compensation Board of Review*, 142 Pa.Cmwlth. 242, 597 A.2d 215 (1991), it is well-established that a reduction in compensation, if substantial enough, will constitute the requisite cause to terminate. However, "there is no talismanic percentage figure that separates a substantial reduction from one that is not. Each case must be measured by its own circumstances."[9] *Ship Inn, Inc. v. Unem-*

ployment, they most likely are not provided for part-time employees.

7. Section 402(b) states in pertinent part:
   **Ineligibility for compensation**
   An employe shall be ineligible for compensation for any week—. . . .
   (b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. . . .
   43 P.S. § 802(b).

8. Employer also argues that Claimant's excessive absenteeism combined with her failure to obtain medical excuses constitute willful misconduct justifying her demotion. However, we will not address this issue since Employer failed to raise it in its Petition for Review and it is therefore waived, *Tyler v. Unemployment Compensation Board of Review*, 139 Pa.Cmwlth. 598, 591 A.2d 1164 (1991). Furthermore, willful misconduct in unemployment cases relates to the issue of **discharge**, not demotion or voluntary termination, *see McKeesport Hospital v. Unemployment Compensation Board of Review*, 155 Pa.Cmwlth. 267, 625 A.2d 112 (1993); Section 402(e) of the Law, 43 P.S. § 802(e), and the record in this case is replete with testimony from Employer's witness, and the Claimant herself, that Claimant was not discharged but that she voluntarily terminated her employment with the bank, and the Board so found.

9. In footnote 3 in *Griffith* Judge Pellegrini made the observation that, although each case must be

determined on its own facts, there were no cases up to that time (August 1991) where benefits had been awarded where the claimant's compensation had been reduced less then 20%, but where the reduction in wages had been more than 20%, the claimant was found to have had good cause to voluntarily terminate the employment. *See, e.g., Ship Inn; National Freight, Inc. v. Unemployment Compensation Board of Review*, 34 Pa. Cmwlth. 161, 382 A.2d 1288 (1978).

*Griffith*, where benefits were denied, concerned only a 12% reduction in income brought about by the employer's elimination of a monthly bonus, which in turn was considered extra compensation and paid on the basis of the company's profitability this following the pattern of *Mignacca v. Unemployment Compensation Board of Review*, 71 Pa.Cmwlth. 43, 453 A.2d 1087 (1983) (a 16.76% reduction) and *Pacini v. Unemployment Compensation Board of Review*, 102 Pa.Cmwlth. 355, 518 A.2d 606 (1986) (only a 3.1% pay cut).

Judge Pellegrini sagely commented, however, that "we do not intend our observation [over/under 20%] to become the test for determining what constitutes a substantial reduction in wages." *Griffith*, 597 A.2d at 218 n. 3. Subsequently, on March 31, 1993, in an opinion also authored by Judge Pellegrini, *Steinberg Vision Associates v. Unemployment Compensation Board of Review*, 154 Pa.Cmwlth. 486, 624 A.2d 237 (1993), we held that a mere 14.2% wage reduction had such a substantial impact on the income of the claimant that it was unreasonable even though the employer had determined that it legit-

*ployment Compensation Board of Review*, 50 Pa.Cmwlth. 292, 412 A.2d 913, 915 (1980).

■ Employer argues, on appeal, relying upon *Frankford Hospital v. Unemployment Compensation Board of Review*, 66 Pa. Cmwlth. 452, 445 A.2d 256 (1982), and *Unemployment Compensation Board of Review v. Tune*, 23 Pa.Cmwlth. 201, 350 A.2d 876 (1976), that it was justified in **"demoting"** Claimant to part-time status because of her excessive absenteeism and that "without doubt, [she] brought the demotion on herself," thus advancing the principle that "a claimant who brings a demotion on himself is not eligible for benefits." (Employer's Brief at 14.) Such is not the law in Pennsylvania if by **"demotion"** is meant **any** discipline which an employer may care to measure out to its employee. While the correlative principle is certainly true, that an **unjustified** demotion in job position or reduction in pay will provide good cause for a voluntary termination, *Frankford Hospital*, simply because **some** discipline may be justified and warranted does not provide employers with unbridled leave to take unreasonable disciplinary measures against its employees; and it does not allow Employer in this case to reduce this Claimant's pay by 40% on the basis that it was helping her to overcome her medical problems.

If it is determined that the reason for the discipline was unjustified, as was the case in *Frankford Hospital*,[10] the Law places the parties in much the same position they would be in a non-disciplinary case, that is, where the employer unilaterally reduces a claimant's salary or transfers an employee to a new position as the result of adverse economic factors or "downsizing" to meet employer's market conditions. *See Steinberg* (employer determined that it could no longer afford to reimburse claimant for her health care coverage). A substantial employment change brought about by an unjust demotion is not reasonable as a matter of law and will afford an employee a necessitous and compelling

reason to quit so as to entitle him/her to unemployment benefits.

Employer's reliance on *Tune* is likewise misplaced. In *Tune*, the claimant received both a five-day suspension and a demotion for fighting with a fellow employee over a gambling debt. Both were disciplined in the same manner, but Tune terminated his employment and applied for unemployment compensation benefits. While the *Tune* Court stated that the claimant brought the demotion upon himself (demoting from an assistant director of security to security supervisor), there was absolutely no evidence that Tune was reduced in pay (other than the five-day suspension) or that the discipline administered was in any way unreasonable; that issue was simply not presented in the case and, accordingly, no comment regarding that issue appears in the opinion.

Employer quotes in its brief the testimony of Employer's Compliance and Operations Officer, Allan Robinson, who participated in the decision to reduce Claimant's status to part-time employment, not for reasons of discipline but "to give her a chance to take care of her medical problems." The full text of the testimony in response to the question from Employer's counsel is as follows:

EL Now the decision to place her on part time status, why was that done, and was punishment involved?

EW2 To my knowledge, **it was not a form of punishment.** The intent was to give her a chance to take care of her medical problems, and hopefully get some medication or medical help that would enable her to become a full time productive worker again.

(N.T. at 21; R.R. at 34A); (emphasis added).

Buttressing that testimony is the testimony of the bank's Vice President and Claimant's supervisor, Sarah Lamar, establishing the fact that Claimant's "demotion" was **not** for disciplinary reasons.

EL Was the decision made to place Ms. Giampietro on part time status?

---

imately could no longer afford to pay for the employees' escalating health care insurance, which the 14.2% reduction in pay represented. Accordingly, we granted benefits, finding that the claimant had good cause to terminate.

**10.** In *Frankford Hospital*, the referee determined that the claimant was unjustifiably demoted and reduced in pay because she was absent on only *two occasions because of illness*, and had properly reported off.

EW1 Yes, after the time, I believe it was March 19th or so when I received what she gave to me as the doctor's certification.... At that point management discussed the situation, and I decided that perhaps the part time position would help to alleviate both her stress and our stress in the bank, because of the excessive absenteeism. We were giving the option of part time, **it was not a form of punishment.** It was an alternative option for us to try to give you a position at the bank and earn income, and hopefully straighten out your medical problems at the same time, to try to benefit both of us.

EL Was Ms. Giampietro ever discharged?

EW1 No, she was not.

(N.T. at 15; R.R. at 28A); (emphasis added).

While Employer **might** have been justified in discharging the Claimant for excessive absenteeism, which **arguably might** have risen to the level of willful misconduct, **if** Claimant had not had an authentic underlying medical reason which caused her absences,[11] the fact remains that Employer did not discharge the Claimant and did not raise the issue of willful misconduct before a referee or the Board. *See* Note 8 *supra.* Further, Employer's reasons for reducing Claimant's wages by 40% could never be justified in an attempt to "straighten out the Claimant's medical problems." Cutting an employee's pay by 40%, and perhaps eliminating her health care coverage is palpably not a proper solution to an employee's medical problems, regardless of what they might be.

In addressing that precise issue, the Board made a specific finding that the "employer did not have adequate justification for moving Claimant from full-time to part-time work," and, predicated on that finding, concluded that "due to this transfer, the claimant would be subject to less hours and benefits, thus, less pay.... [and a] reasonable person in the claimant's position would have felt compelled to quit." We agree.

Even assuming arguendo, however, that Employer's action was a disciplinary demotion, and further that Employer had justification for administering *some* form of discipline, the discipline administered must be reasonable in relationship to the reason which prompted it. One could never argue that an employer is justified in flogging a tardy employee; it might cure the problem of tardiness but the employee would have good cause for voluntarily terminating the employment relationship. Such an absurd hypothetical only demonstrates that had Employer in this appeal administered a less severe form of discipline, *e.g.,* a temporary suspension rather than a permanent 40% reduction in income, such disciplinary action on Employer's part might have been found reasonable by the compensation authorities, and hence justified.

■ The focus of this Court's attention then is not only on the justification for an employer's discipline, but is likewise on the discipline itself, that is, once shown that some form of discipline is warranted, and justified, it must nonetheless be reasonable. A unilateral, substantial, unjustified *or* unreasonable change in the terms and conditions of employment by the employer, will provide a claimant with the necessitous and compelling reason to justify a voluntary termination of employment. And, such a principle does not in any way diminish an employer's authority or fetter its ability to dismiss an employee for willful misconduct.

Employer relies on *Southeastern Pennsylvania Transportation Authority v. Unemployment Compensation Board of Review,* 109 Pa.Cmwlth. 191, 531 A.2d 60 (1987) (*SEPTA* ), as support for the proposition that solely because a claimant's demotion for disciplinary reasons is justified, the claimant may not refuse that discipline.

11. See Pennsylvania Liquor Control Board v. Unemployment Compensation Board of Review, 167 Pa.Cmwlth. 386, 648 A.2d 124 (1994), petition for allowance of appeal denied, 540 Pa. 615, 656 A.2d 120 (1995) (willful misconduct); Tri Corp. v. Unemployment Compensation Board of Review, 61 Pa.Cmwlth. 197, 432 A.2d 1158 (1981) (willful misconduct); see also Ridley School District v. Unemployment Compensation Board of Review, 161 Pa.Cmwlth. 573, 637 A.2d 749 (1994), petition for allowance of appeal denied, 537 Pa. 669, 644 A.2d 1204 (1994) (voluntary quit).

In *SEPTA*, the claimant voluntarily terminated his employment after he had been demoted from his position as a senior project engineer, paying $34,340 annually, to a position entitled "transportation systems specialist" paying $1,866 a year less, which was a 5.4% reduction in pay. Quoting from that opinion, the issue was viewed as: "whether a voluntary termination which results from an unjustifiable demotion can constitute cause of a necessitous and compelling nature." *Id.*, 531 A.2d at 63. The *SEPTA* Court concluded, after reviewing the record, that the findings of the Board were inadequate for proper appellate review to resolve the issue, and we remanded the matter to the Board for further "Findings of Fact on the question of the justifiability of the Claimant's demotion." *Id.* at 64.

Unfortunately, the *SEPTA* Court, in examining the first factor to determine a claimant's eligibility in a voluntary quit case, *i.e.*, the justification of the discipline, never reached the second, *i.e.*, the reasonableness of the discipline itself. Moreover, in explaining our judicial analysis by the use of two contrasting factual hypothetical,[12] the *SEPTA* Court stated that if the employer's reasons for the discipline "constitute a justifiable demotion [it would render] Claimant ineligible for benefits." *Id.* at 63. To the extent that that statement can be interpreted to mean or imply that the employer's justification is the only factor which must be considered, *SEPTA* is overruled.

 We therefore conclude in the appeal now before us, first, that the Board correctly determined that Employer was not justified in reducing Claimant's wages by 40% to cure her medical problem, and second, **even if** justification existed for **some** disciplinary action, a 40% reduction in income, plus the probable elimination of Claimant's fringe

benefits, is so severe that it was, as a matter of law, a necessitous and compelling reason for Claimant to have severed the employment relationship.

Accordingly, we affirm the judgment of the Board.

### ORDER

NOW, October 20, 1995, the order of the Unemployment Compensation Appeal Board in the above-captioned matter is hereby affirmed.

FRIEDMAN, J., concurs in the result only.

NEWMAN, J., dissents.

---

12. The full text of the opinion regarding the hypothetical is as follows:

On the one hand Claimant, who had been working 25 years and was close to vesting his pension, may have let his work performance deteriorate to the point where a demotion was warranted. **This could constitute a justifiable demotion which renders Claimant ineligible for benefits.** On the other hand, the Claimant's new supervisor may have wanted to fill the Claimant's position with an engineer with whom the supervisor was familiar, or the political posture of this government agency may have changed. The supervisor's reasons for Claimant's demotion would be pretextual and in this situation, the demotion would be unjustifiable. As a result, Claimant would remain eligible for benefits.

*SEPTA*, 531 A.2d at 63–64. (Emphasis added; footnotes deleted.)