697 A.2d 243

**ALLEGHENY VALLEY SCHOOL, Appellant,**

v.

**PENNSYLVANIA UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Darrell Callwood, Intervenor, Appellees.**

Supreme Court of Pennsylvania.

Argued Sept. 16, 1996.

Decided June 18, 1997.

356

Arthur D. Feldman, Pittsburgh, for Allegheny Valley School.

Sarah C. Yerger, Harrisburg, for Unemployment Compensation Board of Review.

Darrell Callwood, Intervenor.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

## OPINION OF THE COURT

CASTILLE, Justice.

The issue on appeal in this matter is what factor or factors must be considered when determining whether an unemployment compensation claimant had necessitous and compelling reasons to voluntarily terminate his employment after being demoted, thereby making a claimant eligible for benefits under Section 402(b) of the Unemployment Compensation Law,

43 P.S. § 802(b).[1] Because we hold that the existence of a necessitous and compelling reason in such a case depends solely upon whether the demotion was justified, and since appellant has produced evidence showing that claimant's demotion was justified, we reverse the Commonwealth Court's affirmance of the Unemployment Compensation Board of Review's grant of benefits to claimant.

The relevant facts are that on January 13, 1992, the claimant, Darrell Callwood, began working for appellant, Allegheny Valley School ("AVS"), an institution that provides for the care and education of developmentally disabled individuals, as an assistant house manager for the second shift[2] at a salary of $16,000 per year plus medical and other fringe benefits. The assistant house manager position was classified by AVS as a management staff position. Beginning early in his employment with AVS, claimant's supervisors met with him repeatedly in order to counsel claimant on deficiencies in his job performance. Some of the issues brought to claimant's attention were his failure to follow established routines, his inability to deal effectively with the staff, his failure to use good judgment at work, his deficiency in reporting information in a timely and accurate manner, and his inability to carry out his job responsibilities in a consistent and professional manner.

On July 29, 1994, while claimant was still employed as assistant house manager on the second shift at an increased salary of $18,725 per year, AVS informed claimant that he was being demoted from the assistant house manager position because of his continued inability to perform the responsibilities associated with this position. In place of the assistant house manager position, AVS offered claimant employment as either a house manager aide or as a developmental care

1. Section 402(b) of the Unemployment Compensation Law provides, in pertinent part, that:

**Ineligibility for compensation**

An employee shall be ineligible for compensation in any week—

(b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature ...

43 P.S. § 802(b)

2. The second shift ran from 2:00 p.m. to 10:30 p.m.

specialist. Both of these positions included the same hours and non-monetary fringe benefit package that he had received in the assistant manager position. However, both of the offered positions required claimant to accept a reduction in salary as they only paid $6.76 per hour (approximately $14,000 per year). Also, neither of the offered positions was classified by AVS as a management staff position. On August 1, 1994, claimant refused AVS's offer and terminated his employment.

Claimant then filed for unemployment compensation benefits with the Office of Employment Security. On August 19, 1994, the Office of Employment Security found that claimant had a necessitous and compelling reason for voluntarily terminating his employment with AVS and that claimant was eligible for benefits under Section 402(b) of the Unemployment Compensation Law.

AVS timely appealed this decision and the appeal was assigned to an unemployment compensation referee. The referee conducted hearings on September 20, 1994, November 22, 1994, and December 20, 1994. At these hearings, claimant testified that he did not believe he was demoted. Instead, claimant testified that he believed that he was discharged from the assistant house manager position and was offered reemployment in the other positions offered by AVS. Claimant stated that he did not accept any of the other positions because they provided significantly less compensation than he had previously received as assistant house manager. Claimant, however, admitted at the hearings that he had failed to perform his job duties on certain occasions.

AVS countered claimant's testimony by presenting the testimony of claimant's supervisors. These persons included AVS's house manager, its administrator, its residential services director and its personnel services director. These four witnesses testified about the counselling and consultation provided to claimant because of his continued inability to perform the responsibilities of his position as assistant house manager. Examples of some of the reasons offered by AVS's witnesses for claimant's demotion included claimant's failure to follow established routines when presenting problems to his supervi-

sors, his hasty and volatile reaction to employment situations and to his staff, his failure to keep accurate information concerning the residents, his inability to file timely reports required by AVS policy, his failure to adhere to AVS policy concerning how residents were to be treated, and his breach of the residents' confidentiality.

On January 20, 1995, the referee determined that the evidence supported AVS's contention that claimant was demoted because of poor job performance. The referee also determined that AVS offered claimant continuing employment at a reduced wage and that claimant voluntarily terminated his position. The referee, however, concluded that the demotion and resulting wage reduction created a necessary and compelling reason for claimant's voluntary termination. Thus, the referee affirmed the determination of the Office of Employment Security that claimant was entitled to unemployment compensation benefits under Section 402(b) of the Unemployment Compensation Law.

AVS timely appealed this decision to the Unemployment Compensation Board of Review ("Board"). On March 30, 1995, the Board, without holding further hearings and without the presentation of further evidence, essentially adopted the facts presented in the referee's opinion. In addition to adopting the referee's factual determinations, the Board opined that claimant had worked to the best of his abilities and concluded that claimant's demotion and reduction in pay were unreasonable and unjustified since claimant had worked to the best of his abilities. Thus, the Board affirmed the referee's decision to grant benefits to claimant.

AVS then timely appealed the Board's grant of benefits to the Commonwealth Court. In a published opinion, the Commonwealth Court, relying on *Old Forge Bank v. Unemployment Compensation Bd. of Review*, 666 A.2d 761 (Pa.Cmwlth. 1995),[3] applied the rule of law that when a claimant's demotion

3. In *Old Forge*, the claimant was demoted from full-time employment to part-time employment because of her recurring absences from work due to medical problems. The claimant claimed that she voluntarily quit because the demotion would have resulted in a forty percent (40%)

is justified due to substandard work performance, a claimant can still receive benefits under Section 402(b) of the Unemployment Compensation Law if the claimant is able to make a showing that he made a good faith effort in performing his job or that his conduct was not tantamount to willful misconduct and that the demotion substantially changes the claimant's benefits or responsibilities. Because claimant made a showing of good faith in his job performance and claimant's pay in this case was found by the referee to be substantially reduced, the Commonwealth Court affirmed the grant of benefits.

 This Court granted allocatur in order to address what factor or factors must be considered to support a finding that a claimant had necessitous and compelling reasons for voluntarily terminating employment after being demoted so that he would be entitled to benefits under Section 402(b) of the Unemployment Compensation Law. This Court's scope of review from an appeal of an adjudication of the Unemployment Compensation Board of Review is limited to whether a constitutional right has been violated, an error of law has been committed or whether the necessary findings of fact are supported by substantial evidence. *Zerbe v. Unemployment Compensation Board of Review,* 545 Pa. 406, 411, 681 A.2d 740, 742 (1996).

 The mere fact that a claimant voluntarily terminates his employment does not alone act as an absolute bar to receiving unemployment compensation benefits. *See Monaco v. Com., Unemployment Compensation Bd. of Review,* 523 Pa. 41, 47, 565 A.2d 127, 130 (1989). Instead, a claimant is entitled to benefits under Section 402(b) of the Unemployment Compensation Law if he has "necessitous and compelling" reasons for voluntarily terminating his employment. 43 P.S. § 802(b). The party alleging that the voluntary termination is

wage reduction and a probable elimination of her fringe benefits. The *Old Forge* court affirmed the Board's grant of benefits on the basis that the claimant's demotion was unjustified because of her medical problems and that the wage and benefit reductions were so severe that the claimant had a necessary and compelling reason for voluntarily quitting her employment.

based on "necessitous and compelling" reasons bears the burden of proving the same. *Deiss v. Unemployment Compensation Bd. of Review*, 475 Pa. 547, 553, 381 A.2d 132, 135 (1977). This Court has not spoken on what standard is applicable to determine whether necessary and compelling circumstances exist for a claimant to voluntarily terminate his employment after he has been demoted. However, the Commonwealth Court, through its case law, has developed two lines of thought on how to examine this issue.

In *Greco v. Unemployment Compensation Bd. of Review*, 126 Pa.Commw. 531, 560 A.2d 300 (1989), *Southeastern Pennsylvania Transportation Authority v. Com., Unemployment Compensation Bd. of Review*, 109 Pa.Commw. 191, 531 A.2d 60 (1987), and *Unemployment Compensation Bd. of Review v. Tune*, 23 Pa.Commw. 201, 350 A.2d 876 (1976) (collectively, the *"Tune"* line of cases), the Commonwealth Court recognized that employers in Pennsylvania can properly demote people as a form of discipline or for other legitimate business purposes. When a claimant voluntary quits after being demoted, then, under the *Tune* line of cases, the claimant's eligibility for benefits under the "necessitous and compelling" language of Section 402(b) of the Unemployment Compensation Law necessarily relates to the reason for the demotion. Accordingly, under *Tune*, if the employer was justified in demoting a claimant, the claimant had no necessary and compelling reasons to voluntarily quit and the claimant was deemed ineligible for benefits since his own actions brought about the demotion. Conversely, the *Tune* line of cases held that a claimant was eligible for benefits if he voluntarily quit after an unjust demotion because the unjust demotion constituted a cause of a necessitous and compelling nature. AVS contends that the *Tune* line of cases should be applied because these cases follow the intent of the drafters of the Unemployment Compensation Law.

The Board and claimant in this matter do not agree with AVS's position. Instead, they urge the Court to affirm the rule of law stated in *Old Forge, supra*. In *Old Forge*, the Commonwealth Court expressly overruled the *Tune* line of

cases because it believed that those cases' sole reliance on justification for the demotion did not provide for a proper examination of the "necessitous and compelling" reason issue of Section 402(b) of the Unemployment Compensation Law. Instead, the *Old Forge* court developed a two part test to examine this issue. Under this test, the fact finder must first look to the reason asserted for the demotion. If the demotion was unjustified, the inquiry is ended since the claimant had necessary and compelling reasons to voluntarily terminate his employment. However, if the employer was justified in demoting the claimant for disciplinary or other valid business reasons, the fact finder must then examine whether the changes in the terms and conditions of employment were reasonably related to the reasons for the demotion. As recognized by the Commonwealth Court in the case *sub judice, Old Forge* is the law currently applied by that court in cases involving a claim for benefits based upon a voluntary termination after a demotion.

Our determination of which Commonwealth Court interpretation is correct depends upon the controlling statutory language. When reviewing a statute, we are guided by the Statutory Construction Act. *See* 1 Pa.C.S. § 1501 *et seq.* The object of statutory interpretation is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1921(a).

The public policy of the Unemployment Compensation Law can be found in Section 3, which provides, in pertinent part, that:

Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance ... The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for compulsory setting aside of unem-

ployment reserves to be used for the benefit of persons unemployed through no fault of their own.

43 P.S. § 752. The fault concept articulated in Section 3 concerns that arising in the employer/employee relationship. *See Tronzo v. Com., Unemployment Compensation Bd. of Review,* 514 Pa. 24, 30, 522 A.2d 544, 547 (1987). Moreover, this Court has stated in its examination of Section 3 of the Act that:

> [T]he declared public policy of the Commonwealth of Pennsylvania is to provide economic sustenance to persons unemployed through no fault of their own. Section 3 of the Act is the foundation upon which distinct provisions of the Unemployment Compensation Law rest for interpretative purposes. The purpose of this section is to provide economic reassurance for those workers who are involuntarily unemployed. The intent of the Act is also to sustain those employees who are idle through no fault of their own.

*Tronzo,* 514 Pa. at 30, 522 A.2d at 547 (citations omitted).

As noted above, this Court has never spoken to the proper inquiry for determining what constitutes necessitous and compelling reasons for an employee to voluntarily terminate his employment following a demotion. This Court, however, has spoken in general terms of what constitutes necessitous and compelling reasons under Section 402(b) of the Unemployment Compensation Law. In *Taylor v. Unemployment Compensation Bd. of Review,* 474 Pa. 351, 378 A.2d 829 (1977), this Court stated that:

> [I]t can be said that "good cause" for voluntary leaving one's employment (i.e. that cause which is necessitous and compelling) results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner.

*Id.* at 358–59, 378 A.2d at 832–33.

Statutes, or parts of statutes must be read in *pari materia* when they relate to the same class of persons or things. 1 Pa.C.S. § 1932. If possible, the statute must be construed to

give effect to all of its provisions. 1 Pa.C.S. § 1921(a). Moreover, when general and special provisions are in the same statute, a court must reconcile the two provisions so that effect can be given to both. 1 Pa.C.S. § 1933.

■ Applying these rules of statutory construction, Section 3 and Section 402(b) of the Unemployment Compensation Law both concern a claimant's right to receive unemployment compensation. Thus, these two statutory provisions must be read in *pari materia.* Section 3 provides the declared public policy of the Commonwealth that a claimant can only receive benefits if he is unemployed through no fault of his own and this policy must be considered when construing other parts of the Unemployment Compensation Law. Thus, interpretations of other provisions of the Unemployment Compensation Law such as Section 402(b) must consider that a claimant can only receive benefits if he is unemployed through no fault of his own. Extending this rationale to Section 402(b) of the Unemployment Compensation Law compels us to conclude that the logical focus for determining whether necessitous and compelling reasons exist for a claimant to voluntarily terminate his employment after receiving a demotion is the justification for the demotion. Thus, a claimant does not have necessary and compelling reasons to voluntarily terminate his employment if the demotion was justified because the change in job duties and remuneration was the result of the claimant's fault.[4]

■ Therefore, we reject the current reasoning of the Commonwealth Court in *Old Forge, supra* since it is not an accurate statement of the law. Instead, we adopt the reasoning from the *Tune* line of cases that if a claimant refuses to accept a justified demotion and voluntarily quits, the claimant is ineligible for benefits under Section 402(b) because he is unemployed as a result of his own fault and he terminated his employment without a necessitous and compelling reason.

Policy reasons also support this interpretation that a determination of necessitous and compelling reasons in a voluntary

4. Conversely, a claimant will have necessitous and compelling reasons to voluntarily terminate employment if the demotion was unjustified.

termination after a demotion case focus solely on the justification of the demotion. As previously recognized by the Commonwealth Court, an employer can demote an employee for valid reasons. *Southeastern Pennsylvania Transportation Authority, supra.* To require an examination of a factor other than the justification for the demotion would lead to employers never demoting employees because of fear of being subject to claims for benefits. Such a chilling effect on valid demotions would have the undesirable effect of employers leaving incompetent people in positions they are incapable of performing.

A review of the record in this case shows that claimant admitted that he was delinquent in completing the required documentation of the assistant house manager position. The record also shows that AVS counseled and warned claimant of deficiencies in his job performance almost from the time he was hired until approximately a year and a half later when he was demoted. Moreover, the record established that, despite this counselling, claimant was unable to carry out the responsibilities of the assistant house manager position, that he consistently used poor judgment in his performance and that he continued to have problems supervising his staff. These factors demonstrated that AVS was justified in demoting claimant. Thus, claimant's voluntary termination was the result of his own fault and, accordingly, he did not have necessitous and compelling reasons for voluntarily terminating his employment with AVS. Therefore, claimant was ineligible for benefits under Section 402(b) of the Unemployment Compensation Law and we reverse the order of the Commonwealth Court affirming the granting of benefits to claimant.

NEWMAN, J., did not participate in the consideration or decision of this case.

CAPPY and NIGRO, JJ., file dissenting opinions.

CAPPY, Justice, dissenting.

I am compelled to dissent. Ultimately, the legal issue to be decided in this appeal is what analytical framework shall be used to determine the propriety of unemployment compensa-

tion benefits in matters where an employee who is demoted because of performance shortcomings leaves his employment. Today, the majority adopts an incomplete and inadequate analytical framework which I believe is contrary to both the language of the Unemployment Compensation Law (Law)[1] and this court's prior decisions. Unfortunately, the majority rejects the more comprehensive and fair analytical framework recently adopted by the Commonwealth Court, which, consistent with the unemployment compensation statute, properly protects an employer's decision to demote an employee, as well as provides a safety net for an employee who is working to the best of his ability but who is faced with a demotion so drastic or severe that he is compelled to leave his new position.[2]

1. 43 P.S. § 751, et seq.

2. In short, the majority's analytical framework is restricted to a single inquiry: was the demotion justified. If the demotion was justified, the claimant cannot receive benefits. This limited inquiry was expressly rejected by the Commonwealth Court in its recent, 6–1, *en banc* decision in *Old Forge Bank v. Unemployment Compensation Bd. of Review*, 666 A.2d 761 (Pa.Cmwlth.1995). In *Old Forge*, the Commonwealth Court readopted its original interpretation of the Law. In doing so, the *Old Forge* court expressly overruled *SEPTA v. Unemployment Compensation Bd. of Review*, 109 Pa.Cmwlth. 191, 531 A.2d 60 (1987) to the extent that case implied that the employer's justification for a demotion is the only factor to be considered in these matters. As the *SEPTA* court relied upon *Unemployment Compensation Bd. of Review v. Tune*, 23 Pa.Cmwlth. 201, 350 A.2d 876 (1976), and *Greco v. Unemployment Compensation Bd. of Review*, 126 Pa.Cmwlth. 531, 560 A.2d 300 (1989) relied upon *SEPTA*, to the extent these cases stand for the same proposition, they are presumably overruled as well. Thus, the single inquiry framework once embraced by the Commonwealth Court was expressly rejected by its creator.

 The *Old Forge* court crafted a comprehensive, yet easily applied, analytical framework to be used when an employee is demoted for performance shortcomings where the employee is working to the best of his ability. This framework consists of two straightforward inquiries: 1) was the demotion justified and 2) was the demotion reasonable. Thus, even if an employer was justified in demoting an employee, under the second prong of the framework, if an employee establishes an unreasonable change in the terms and conditions of employment, i.e., an unreasonable demotion, the employee will have had a necessitous and compelling reason to voluntary terminate his employment. This second inquiry, as explained more fully in the body of the opinion, is required by the Law and is absolutely necessary to make a full determination of the propriety of benefits in this context.

There are two major flaws with the analytical framework adopted by the majority. First, the framework is contrary to the Law, and in essence, amends the Law, as it fails to consider whether, even after a justified demotion, the claimant had necessitous and compelling reasons to leave his employment. Second, the framework fails to account for the situation where an unscrupulous employer attempts to evade the payment of benefits by constructively discharging an employee through the pretext of a demotion. Each of these shortcomings points to an adoption of the Commonwealth Court's *Old Forge* approach.

Section 402(b) of the Law provides that an employee who voluntarily terminates his or her employment may still be eligible for benefits if he or she had a necessitous and compelling reason for doing so. 43 P.S. § 802(b). This court stated in *Taylor v. Unemployment Compensation Bd. of Review,*:

> [I]f a worker leaves his employment when he is compelled to do so by necessitous circumstances or because of legal or family obligations, his leaving is voluntary with good cause, and under the act he is entitled to benefits. The pressure of necessity, of legal duty, or family obligations, or other overpowering circumstances and his capitulation to them transform what is ostensibly voluntary unemployment into involuntary unemployment.[3]

Thus, in order to determine whether an employee had a "necessitous and compelling" reason for leaving a position, the focus of the inquiry is on the impact of these circumstances upon the employee. *Philadelphia Parking Authority v. Unemployment Compensation Bd. of Review,* 654 A.2d 280, 282 (Pa.Cmwlth.1995).

Simply stated, the majority's framework is incomplete. Truly compelling circumstances such as where an employee is demoted from full-time to part-time status leaving her with

---

3. *Taylor,* 474 Pa. at 359–60, 378 A.2d at 833, quoting *Sturdevant Unemployment Compensation Case,* 158 Pa.Super. 548, 556–57, 45 A.2d 898, 903 (1946)(footnote omitted)(emphasis supplied); *see also, Pittsburgh Pipe and Coupling Co. v. Unemployment Compensation Bd. of Review,* 401 Pa. 501, 505, 165 A.2d 374, 376 (1960).

the devastating loss of all medical benefits, or where an employee is demoted and incurs a crippling cut in monetary compensation which leaves the employee unable to support a family would not be considered under the single prong analysis of the majority. The Law clearly requires a review of such circumstances and the second prong of *Old Forge* satisfies that mandate. Under the second prong of the *Old Forge* analytical framework, the employee is at least given the opportunity, as required by the Law, to demonstrate that she had a necessitous and compelling reason to voluntarily leave her employment, i.e., that the demotion was so drastic or severe so as to be unreasonable.

Not only does the majority's framework fail to consider the circumstances surrounding an employee's departure after a demotion where an employer acts in good faith, but it also fails to protect an employee against an unscrupulous employer who attempts to evade the Law. Again, an example is demonstrative of the shortcomings in the majority's approach.

It is easy to envision a situation where an employer is faced with an employee who is not meeting performance expectations. Rather than terminate the employee and be saddled with the expense of unemployment compensation benefits, this unscrupulous employer demotes the employee, again justifiably so based upon the employee's admitted performance shortcomings. However, the demotion is draconian; it is to a position which requires a 90% salary cut and a loss of medical benefits. The employee is forced to "voluntarily" leave his new position. In essence, the employer has constructively discharged the employee, yet the employee is left without unemployment compensation benefits or recourse because the demotion was "justified." The employer in this example would be able to violate the very purpose of the Law and escape having to pay benefits.

Thus, it is clear that the analytical framework embraced by the majority has two basic, and in my mind fatal, flaws. Moreover, I believe that the reasons offered by the majority in support of adopting that framework are inconsistent with the Law and are simply unpersuasive.

The majority conducts a statutory analysis to support its position. The majority concludes that because the underlying policy of the Law is to provide benefits to those who are unemployed "through no fault of their own," then, a claimant will not have a necessitous and compelling reason to leave his employment if his demotion was justified "because the change in job duties and remuneration was the result of claimant's fault." This reasoning may have some superficial appeal, however, it does not withstand close scrutiny and is in my mind contrary to the unemployment compensation statute.[4]

It is axiomatic that if an employee is *terminated* for performance problems, i.e., mere incompetence or inability, yet was working to the best of his ability, he will receive benefits, and thus, he is unemployed through no "fault" of his own. Therefore, it simply does not follow that if an employee is *demoted* for the same performance problems, and again was working to the best of his ability, the demotion is due to the "fault" of the employee. By focusing solely on a fault concept, I believe that the majority improperly treats a demotion for mere incompetence or inability the same as a demotion for willful misconduct, i.e., *inter alia*, a willful or wanton disregard of the employer's interests.

There may arise a situation where an employee's conduct constitutes willful misconduct and the employer, rather than terminating the employee, demotes the employee as discipline, however, a demotion, such as in the case *sub judice*, is not always for willful misconduct. In fact, an employer will often demote an employee, who is working to the best of his ability, yet who is not meeting expectations in a certain position, in

**4.** A further significant problem with the majority's analysis is that it primarily relies upon section 3 of the Law, 43 P.S. § 752, which dictates that an otherwise eligible claimant may receive benefits where he has become unemployed "through no fault of his own." While section 3 is a general statement of statutory objectives, it is also an independent basis for denying benefits to claimants for *nonwork-related* misconduct, separate and distinct from section 402, 43 P.S. § 802(e), which is used to disqualify claimants for *work-related* misconduct. *SEPTA v. Unemployment Compensation Bd. of Review*, 96 Pa.Cmwlth. 38, 506 A.2d 974 (1986). Obviously, section 3 as an independent basis for denying benefits is inapplicable as this matter deals with work-related performance deficiencies.

hopes of "rehabilitating" that employee and finding him a new position in which the employee can perform to a satisfactory level.

While the majority improperly equates these two types of demotions, the *Old Forge* framework properly treats these circumstances as distinct. As the Commonwealth Court in this matter noted, if an employee's conduct constitutes willful misconduct and the employer demotes the employee, the sole inquiry will be whether the demotion was justified. If the demotion is justified, the employee who, after engaging in willful misconduct, voluntarily leaves his new position will be denied benefits. Conversely, if an employee is working to the best of his ability, yet still suffers from performance deficiencies, and his employer demotes him, the relevant inquiry will first be whether the demotion was justified, and if so, whether the demotion was reasonable. Only if the employee can prove that the demotion was unreasonable would he be able to receive unemployment compensation benefits.[5]

Finally, the policy concerns suggested by the majority are unfounded. The majority wants us to believe that if a tribunal examines any factor other than the justification for the demotion, then this would lead to "employers never demoting employees because of fear of being subject to claims for benefits," and would result in "employers leaving incompetent people in positions they are incapable of performing." These concerns are clearly without basis. Contrary to the majority's assertions, under the *Old Forge* analysis, an employer would still be encouraged to demote an employee whose performance was unacceptable, i.e., the employer will not have to pay unemployment compensation benefits. However, the demotion would simply have to be justified and reasonable. Moreover, an employer has always had, and would continue to have, the option of terminating an incompetent employee and paying

5. Of course, mere dissatisfaction with a demotion is not enough. Only the most drastic circumstances, i.e., the most unreasonable demotions, will allow an employee who has voluntarily left his new position to receive benefits. It is the employee's burden to show a necessitous and compelling reason for leaving his employment, *Taylor, supra,* and such employee should be strictly held to this burden.

that employee unemployment compensation benefits, benefits which are limited in both duration and amount. Thus, the policy concerns offered by the majority ring hollow and fail to support its approach.

In conclusion, the analytical framework adopted by the majority is flawed because it fails to account for certain limited circumstances in which an employee may have a necessitous and compelling reason to leave his employment, even after a justifiable demotion. Moreover, the reasons offered by the majority for adopting such a framework are inconsistent with the Law and are simply unpersuasive.

For all of the above-stated reasons, I would affirm the well-reasoned, comprehensive, and fair decision of the Commonwealth Court.

NIGRO, Justice, dissenting.

I would affirm the Commonwealth Court's decision based upon *Old Forge Bank v. Unemployment Compensation Bd. of Review*, 666 A.2d 761 (Pa.Cmwlth.1995). I join in Mr. Justice Cappy's dissenting opinion with the exception of his statements that a necessitous and compelling reason to voluntarily leave employment requires "the most drastic circumstances." To the contrary, a necessitous and compelling reason to leave "results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner." *Taylor v. Unemployment Compensation Bd. of Review*, 474 Pa. 351, 358–59, 378 A.2d 829, 832–33 (1977); *Old Forge*, 666 A.2d at 764.