IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stronghold Digital Mining : 
Services, LLC, : 
 : 
                Petitioner : 
 : 
        v. : No. 131 C.D. 2024
 : Submitted: June 3, 2025
Unemployment Compensation : 
Board of Review, : 
 : 
            Respondent : 


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE MICHAEL H. WOJCIK, Judge (P.)
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                      FILED: July 22, 2025

Stronghold Digital Mining Services, LLC (Employer), petitions for review of the December 29, 2023 order of the Unemployment Compensation Board of Review (the Board). The Board reversed the decision of the Referee, which concluded that Bozhidar Dragozov (Claimant) was ineligible for unemployment compensation benefits under Section 402(b) of the Unemployment Compensation Law (Law).[1] On appeal, Employer argues that the Board erred in concluding that Claimant had a necessitous and compelling reason for voluntarily terminating his employment. After careful review, we reverse.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b).

Claimant's tenure with Employer, a crypto asset mining company, lasted from October 18, 2021, to March 24, 2023. Claimant was initially hired by Employer, due to his experience in Bitcoin mining, as a tech lead at an established data center in Kennerdell, Pennsylvania (Scrubgrass). In this position, Claimant received an hourly wage of $29.00, but, shortly thereafter, Claimant received a raise to $31.00 an hour.

Early on in Claimant's employment, Employer sought to expand its operations by opening a new data center in Nesquehoning, Pennsylvania (Panther Creek). This coincided with Employer's decision to promote Claimant as a Mining Lead on May 30, 2022. As Mining Lead, Claimant's duties included overseeing the nascent mining operations in Panther Creek as well as continuing to oversee the operations at Scrubgrass. Because Claimant lived near the Scrubgrass data center, Claimant frequently travelled over four hours across the Commonwealth to fulfill his duties at Panther Creek. Employer further afforded Claimant the option to complete some of his work remotely. With respect to compensation, Claimant became a salaried employee and began receiving a guaranteed annual salary of $65,000.

By January 2023, the Chief Operating Officer (COO) responsible for Claimant's initial promotion, and to whom Claimant reported, had been replaced by a successor. The successor only lasted a couple months before vacating the position. Amidst these staff changes, Claimant alleges that on or about February 24, 2023, Chris Radwanksi, who was temporarily carrying out the COO's duties while remaining in his position as the Scrubgrass data center manager, explained that Employer would be revising Claimant's responsibilities in the company and that he was to complete his work in person at the Scrubgrass data center only. Referee's

Hearing, 10/12/23, Notes of Testimony (N.T.), at 13; *see also* Certified Record (C.R.) at 33.  As a result, Claimant began to feel as though his responsibilities within the company had become unclear, leading Claimant to suffer from a lack of motivation.  Additionally, a number of Claimant's projects – which he was assigned to oversee by the prior COO – were reassigned to other departments or cancelled altogether.  C.R. at 56.  Claimant saw this role revision as "going backwards" in the company and as failing to utilize his expertise.  Referee's Hearing, 10/12/23, N.T., at 13.

Following a conversation between Claimant and Radwanski, Claimant agreed that he would provide a list of responsibilities that he saw himself "handling and leading," which would then be reviewed by management to clarify Claimant's role within the company.  C.R. at 47.  Employer further expressed its desire to maintain Claimant's employment with the company and put Claimant in a role where he could help Employer "hit this thing out of the park."  *Id*.  However, Employer added that it was critical for Claimant to be on site Monday through Friday with everyone else.  *Id*.

For his part, in an email on February 27, 2023, Claimant recognized his lack of motivation as well as other "changes" in his demeanor.  C.R. at 48.  As for restructuring his position, Claimant requested, *inter alia*, that he be tasked with "full ownership of the mining environments company[-]wide," including Panther Creek, and a return to his oversight role for certain projects which had been reassigned to other departments earlier that year.  *Id*.  Claimant alleges that Employer never responded to this email or otherwise clarified his role within the company.  *Id*. at 33.  Claimant notes, however, that Employer issued him a Performance Improvement

Plan (PIP) on March 21, 2023. *Id*. The PIP is not included in the Certified Record.[2] On March 27, 2023, Claimant submitted a letter of resignation to Radwanski. Therein, he stated: "I am writing to inform you that I am resigning my position [with Employer] as Mining Lead effective as of 3/27/23. I am resigning my position because I choose to pursue other career endeavors." *Id*. at 41.

Claimant thereafter filed an application for unemployment compensation benefits on May 22, 2023, which the UC Service Center denied on July 25, 2023. The Referee likewise found Claimant to be ineligible for benefits under Section 402(b) of the Law. *See* C.R. at 167-69. The Referee reasoned that Claimant did not discuss the issues with Employer's decision to revise his role before voluntarily terminating his employment. Further, the Referee noted that Claimant stated he was resigning his position with Employer to pursue other career endeavors – which he had not succeeded in obtaining by the time of her hearing – even though Employer had continuing work available for Claimant at the time of his departure. In the Referee's view, this evinced Claimant's failure to act with "ordinary common sense," such that he lacked a necessitous and compelling reason to terminate his employment. *Id*. at 168-69.

In a decision circulated on December 29, 2023, the Board reversed the Referee's decision and concluded that Claimant was eligible for benefits under Section 402(b) of the Law. *See* C.R. at 192-93. In pertinent part, the Board issued the following findings of fact:

---

[2] Employer filed exhibits in this Court purporting to evidence the PIP as well as other communications with Claimant that it believes supported its decision to revise Claimant's role. However, we may only consider the evidence contained in the Certified Record, such that we will not consider these auxiliary documents. *See Croft v. Unemployment Compensation Board of Review*, 662 A.2d 24, 28 (Pa. Cmwlth. 1995).

2. [C]laimant was promoted to a mining lead in May 2022.

3. [C]laimant has been working at two (2) different sites, the Scrubgrass power plant in Kennerdell, P[ennsylvania], and one in Panther Creek, as well as performing remote work.

* * *[3]

5. In February 2023, [C]laimant's responsibilities changed, such as[] being required to work only at the [] Scrubgrass Power Plant, Monday through Friday 9:00 a.m. to 5:00 p.m.

6. On March 27, 2023, [C]laimant resigned from his employment because his current responsibilities were not comparable to the responsibilities he was promoted to perform.

Board Decision, 12/23/23, at Findings of Fact (F.F.) Nos. 2-3, 5-6.

The Board reasoned that, upon Employer's unilateral revision of Claimant's role, "the changes left [Claimant] no opportunity for remote work, consisted of a lack of directions regarding his daily activities and provided no increase in pay to compensate for the increase in hours he was expected to work. [C]laimant credibly testified that he informed [E]mployer about his concerns in order to gain clarity on his job responsibilities." Board Decision at 2. Thus, the Board concluded that Claimant "resigned only after his employment was unilaterally changed resulting in a significant loss in hours and wages, [C]laimant had a necessitous and compelling reason to resign." *Id*. Employer's timely petition for review followed.

---

[3] We note that there seems to be some confusion regarding whether Employer's role revision was styled a promotion in name only. *See* Board Decision, 12/23/23, at F.F. No. 4. This is not the case. The only relevant promotion in this matter occurred when Employer promoted Claimant to Mining Lead in May 2022. *See* Referee's Hearing, 10/12/23, N.T., at 17.

On appeal,[4] Employer presents a single issue for our review: whether the Board erred in finding that Claimant possessed a necessitous and compelling reason for voluntarily terminating his employment with Employer.

Section 402(b) of the Law provides:

> An employe shall be ineligible for compensation for any week --
>
> * * *
>
> > (b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature . . . .

43 P.S. §802(b). "Whether a claimant had cause of a necessitous and compelling nature for leaving work is a question of law subject to this Court's review." *Middletown Township v. Unemployment Compensation Board of Review*, 40 A.3d 217, 228 (Pa. Cmwlth. 2012). The claimant bears the burden of proving that necessitous and compelling reasons motivated his decision to voluntarily terminate his employment. *Id*. The claimant must establish that (1) circumstances existed that produced real and substantial pressure to terminate employment; (2) like circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve his employment. *Id*. (citing *Procito v. Unemployment Compensation Board of Review*, 945 A.2d 261, 265 (Pa. Cmwlth. 2008)).

However, "it is well-settled that an employer's imposition of a substantial unilateral change in the terms of employment constitutes a necessitous and compelling cause for an employee to terminate [his] employment." *Brunswick*

---

[4] Our review is limited to determining whether constitutional rights were violated, an error of law was committed, or the necessary factual findings are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704.

6

*Hotel and Conference Center, LLC v. Unemployment Compensation Board of Review*, 906 A.2d 657, 660 (Pa. Cmwlth. 2003). We determine whether this change is sufficiently substantial "as to warrant necessitous cause for terminating employment" based on the unique circumstances presented by each case. *Id*. at 660. "[S]ubstantiality is measured by the impact on the employee, and whether the change involves any real 'difference' in employment conditions." *McCarthy v. Unemployment Compensation Board of Review*, 829 A.2d 1266, 1272 (Pa. Cmwlth. 2003). "Mere dissatisfaction with one's working conditions does not constitute cause of a necessitous and compelling nature for terminating one's employment." *Mazur v. Unemployment Compensation Board of Review*, 193 A.3d 1132, 1135-36 (Pa. Cmwlth. 2018).

Employer contends that Claimant's decision to terminate his employment was simply a result of his dissatisfaction with his new working conditions – "none of which increased the amount of work he was required to perform or resulted in any decrease (let alone a 'significant loss') in money or benefits." Employer's Brief at 11. Rather, Employer submits that Claimant quit because of the issuance of the PIP, which identified certain employment requirements that Claimant was not meeting. *Id*. at 14. In any event, Employer believes that it was well within its rights to modify Claimant's job duties and that the modifications imposed upon Claimant were so reasonable they could not justify Claimant's resignation. *Id*. at 15 (citing *Radnor Township v. Unemployment Compensation Board of Review*, 580 A.2d 934, 935 (Pa. Cmwlth. 1990)).

The Board responds that Employer's unliteral revision of Claimant's responsibilities constitutes more than mere dissatisfaction with his working conditions. Rather, the Board argues that the changes constitute a *de facto* demotion:

7

upon being required to complete all work in person at Scrubgrass, "his hours increased, but Employer kept his compensation at $31.00 per hour, even as a salaried employee." Board's Brief at 9. However, the Board concedes that although converting Claimant's attendance requirements from hybrid to solely in-office work would have been insufficient "standing alone" to provide Claimant with a necessitous and compelling cause to quit his job, the additional circumstances in this case amount to a necessitous and compelling cause. *Id*. at 9 n.6. Finally, the Board reminds this Court that we owe deference to the Board's findings of fact, where those facts are supported by substantial evidence. We likewise owe the party that prevailed before the Board "the benefit of all inferences that can logically and reasonably be drawn from the testimony to see if substantial evidence for the Board's conclusion exists." *Id*. at 6 (citing *Taylor v. Unemployment Compensation Board of Review*, 378 A.2d 829, 831 (Pa. 1977)).

We agree that, here, Claimant's resignation stems from his dissatisfaction with his new working conditions rather than any necessitous and compelling reason. Initially, we note that the Board issued relatively few findings of fact in this matter and despite predicating its reversal of the Referee's decision on an alleged reduction in salary, the Board never found as fact that Claimant suffered a reduction in salary. Even if it had, however, such finding would not have been supported by substantial evidence.

In support of its decision, the Board directs our attention to Claimant's testimony.

> R[eferee]: All right. And [Claimant], what was the primary reason, again, for your reason, again, for you leaving?

C[laimant]: Primary reason is because they removed my position, and they changed my responsibilities within the company and my role.

* * *

R[eferee]: So how were your hours changed?

C[laimant]: I was expected to be on-site Monday through Friday 9 to 5, as opposed to traveling between two sites and working remote[ly].

* * *

R[eferee]: [Claimant], was your salary changed at all?

C[laimant]: No, it wasn't. It was the way that I got paid changed in arrears versus current and the way – getting a steady paycheck versus hourly, that changed. I didn't receive any overtime obviously; I was in a management position. I was sometimes working 40 hours, sometimes working 70 hours.

* * *

C[laimant]: My compensation changed from hourly to salary in May [2022] when I got my promotion [to Mining Lead].

[Counsel]: And it did not change in January of 2023, right?

C[laimant]: No, it did not change. Throughout – the promotion was not increase in pay, whatsoever. It was just different terms in the way that I get paid.

Referee's Hearing, 10/12/23, N.T., at 14-15. Based on this testimony, the Board incorrectly concluded that Claimant experienced a reduction in salary. Rather, his decision to resign related purely to circumstances accompanying his role revision: the loss of remote work and his ability to travel between the Scrubgrass and Panther Creek data centers.

9

On the latter point, although the Board frames Claimant's ability to work remotely and travel as a "major benefit" to Claimant, *see* Board's Brief at 9, his testimony indicates that it was merely a matter of personal preference. In explaining why it was important for him to have flexibility while travelling between the two data centers, Claimant stated:

> [Counsel]: At times, were you working at a hotel in between the two data centers?
>
> C[laimant]: Yeah. I liked working in the hot tub of one of the hotels in Nesquehoning. It was great to be able to travel and work on issues and talk to [management], but yeah. I would be working late at night in the hotel sometimes rescheduling when I came back home because we had more work to do.

Referee's Hearing, 9/14/23, N.T., at 16-17.

Put simply, Claimant's dissatisfaction with Employer's change to his responsibilities, and modifying his flexible work schedule and travel, is not sufficiently substantial to amount to a necessitous and compelling cause for resigning his employment – nor is his feeling that his role revision amounted to a demotion. To the extent that the Board resolved this matter under that rationale, we note that determining whether a claimant's voluntary resignation following a demotion constitutes a necessitous and compelling cause requires a different analysis than the one undertaken by the Referee or the Board. *See Allegheny Valley School v. Unemployment Compensation Board of Review*, 697 A.2d 243, 248 (Pa. 1997) ("[T]he logical focus for determining whether necessitous and compelling reasons exist for a claimant to voluntarily terminate his employment after receiving a demotion is the justification for the demotion.").

At bottom, Claimant's discontent with his working conditions drove his decision to seek out other career opportunities. While that is as valid as any other reason for quitting one's job, it does not warrant a grant of benefits under Section 402(b) of the Law. *Monaco v. Unemployment Compensation Board of Review*, 565 A.2d 127, 130 (Pa. 1989).

Accordingly, the Board's order is reversed.

_____
MICHAEL H. WOJCIK, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stronghold Digital Mining    :
Services, LLC,    :
   :
          Petitioner    :
   :
      v.    : No. 131 C.D. 2024
   :
Unemployment Compensation    :
Board of Review,    :
   :
          Respondent :

## **O R D E R**

AND NOW, this 22nd day of July, 2025, the decision of the Unemployment Compensation Board of Review dated December 29, 2023, is **REVERSED.**

_____
MICHAEL H. WOJCIK, Judge